F. W. McGee, Respondent, v. St. Joseph Belt Railway Co., Appellant.—93 S. W. (2d) 1111.

Kansas City Court of Appeals.   April 6, 1936.

*Randolph & Randolph* and *Nile L. Vermillion* for respondent.

*Brown, Douglas & Brown* for appellant.

SHAIN, P. J.—This is a suit for damages wherein the plaintiff's action is based upon an alleged breach, by defendant, of a contract of employment which, by its terms provided a working agreement between the defendant and representatives of a brotherhood of railroad employees of which plaintiff was a member.

The agreement in issue was negotiated on March 10, 1928. The agreement was signed by J. O. Barclay, who was then president of the defendant company, and was signed on behalf of the brotherhood yardmen by C. W. Shane, general chairman, and C. M. Banman, general secretary, and approved by F. W. McGee, secretary.

As the question herein involves seniority rights of the yardmen, we include clauses of the agreement that we conclude are most pertinent to the issue. Paragraphs (a) and (b) of Article XI are as follows:

"(a) Seniority rights of yardmen shall date from the day they first perform service in the yard as yardmen.

"(b) The right to preference of work and promotion will be governed by seniority in the service, the yardmen oldest in the service

will be given preference if competent, but if considered not competent, he will be advised in writing if a letter is requested."

Article XIII is as follows:

"A correct seniority list shall be furnished the local chairman every six months, and a copy posted in the yard office to which yardmen shall have access at all times, and local chairmen shall be notified of all names removed from the list and cause of such removal."

Paragraphs (g) and (m) of Article XIV are as follows:

"(g) Yardmen will not be suspended or dismissed from service without cause. Yardmen suspended or dismissed will be given a hearing within five days, if application for a hearing is made in writing to the superintendent or general manager. At the hearing the yardman can be represented by any person of his choice. If suspension or dismissal is found unjust, he will be reinstated and paid for all time lost.

"(m) This agreement supercedes all previous agreements and shall be in effect until March 10, 1929, and thereafter subject to thirty days' notice by either party to the other of a desire to change or terminate the same or any party thereof."

The plaintiff herein entered the employment of the defendant as a yardman on November 7, 1918, and asserts his seniority rights as based on said date. Seniority rights under the agreement provides a preference in which the yardmen are to be called for service and permitted to work.

The plaintiff pleaded breach of the agreement as follows:

"Plaintiff further states that while said contract was in full force and effect, and in violation of said contract, and in violation of the first clause of Section 2 of Act of the 69th Congress of the United States known as 'Railway Labor Act' which act requires of the defendant, its officers and agents that they exert every reasonable effort to make and maintain agreements with employees concerning working conditions, the defendant did on the 10th day of October, 1930, put into force and effect a changed, altered and modified seniority list, on which seniority list plaintiff's name appeared twenty-eighth in the order thereof and so far down on said seniority list from and after said date, that plaintiff has been deprived of the right to work in the order his prior seniority had entitled him to; that if the seniority list as it existed prior to October 10, 1930, had been maintained in force and effect by the defendant, plaintiff would have at all times from and after October 10, 1930, been entitled to work each and every day thereof at the rate and pay hereinbefore stated and would have earned the sum of Six Thousand One Hundred Sixty Three Dollars and Four Cents ($6163.04).

"Plaintiff states that by reason of the wrongful acts of defendant aforesaid, he has been deprived of an opportunity to work and that

he has only been able to earn since said time the sum of Five Hundred Dollars ($500.00), although the plaintiff has made every reasonable and diligent effort to secure work; that by reason of the premises aforesaid, plaintiff has been damaged in the sum of Fifty Six Hundred Sixty-three Dollars and Four Cents ($5663.04)."

The defendant first filed a demurrer to plaintiff's petition, same being overruled the defendant joined issue by answer. The defendant in its answer admits that it entered into the contract of March 10, 1928, and embraces in its answer paragraph (m) of Section XIV (same set out in full above). However, concerning the said agreement, the defendant specifically denies, "that at any time it entered into such a contract with Local Lodge, Number Ninety-two or its duly constituted representatives, *which was binding upon the plaintiff or which became terms if any contract of employment between the plaintiff and defendant.*" (Italics ours.)

The defendant further pleading states as follows:

"The defendant further states that the contract or agreement last mentioned was terminated and abrogated by Local Lodge Number Ninety-two Brotherhood of Railroad Trainmen, acting by and through its regularly constituted representatives, on or about the Tenth day of October, 1930, since which date said contract has been of no force and effect; that if said contract so terminated on or about the Tenth day of October, 1930, was ever binding upon the plaintiff or constituted any part of any contract of employment between him and the defendant, the same was terminated and abrogated as aforesaid by action of the same Local Lodge Number Ninetytwo, and its duly constituted representatives who made and entered into the same, and if said Lodge and its representatives had authority to, and could bind and contract for the plaintiff, which the defendant denies, its action in terminating said interest would also be binding upon the plaintiff.

"Further answering, the defendant states that while it did not change, alter, modify or put into effect any modified seniority list on the Tenth day of October, 1930, or any other date, as alleged in plaintiff's petition, said Local Lodge Number Ninety two Brotherhood of Railroad Trainmen, of which plaintiff was and is a member, did on or about that date, and assuming and representing to act on behalf of and with authority to bind the plaintiff, adopt and furnish to the defendant a revised and consolidated seniority list, consolidating into one list the names of all yardmen then working for the defendant and Union Terminal Railway Company, another railroad corporation of St. Joseph, Missouri, whose railroad operations were, with the consent of said Local Lodge Number Ninetytwo, and its representatives, consolidated with the railroad operations of the defendant.

"The defendant further states that the plaintiff ratified and adopted the action of said Local Lodge Ninetytwo and its representatives, to

bind the plaintiff to act for and in his behalf, and recognized and admitted the authority of said Local Lodge Number Ninetytwo and its representatives, to bind the plaintiff in that regard, in that the plaintiff appealed in accordance with the rules and regulations pertaining to appeals in Brotherhood of Railroad Trainmen to the highest authority in said organization having jurisdiction and control over said Local Lodge Number Ninetytwo, and on said appeal the roster of employee and consolidated seniority list above referred to, so adopted and promulgated by said Local Lodge Number Ninetytwo, were upheld and affirmed and plaintiff's appeal therefrom denied.

''The defendant further states that from and after the prosecution and determination of the plaintiff's said appeal, referred to in the last paragraph hereof, the plaintiff continued to work for the defendant when his services were required as an 'extra' employe or 'extra board man,' and during such time and when services of extra board yardmen were required, the defendant offered employment to the plaintiff in the order of rotation provided for in said consolidated seniority list so fixed, established and promulgated by and at the instance of said Local Lodge Number Ninetytwo Brotherhood of Railroad Trainmen.

''Further answering, the defendant states that there never did exist any contract, written or oral, between the plaintiff and the defendant providing for any term or duration of employment of the plaintiff by the defendant, and that the plaintiff was at all times at liberty to terminate any such employment at will, and that the plaintiff never did have any contract of employment with the defendant of any specified duration or to continue longer than plaintiff's services were satisfactory to and required by the defendant.

''Further answering, the defendant states that by the act and consent of the plaintiff under the circumstances herein recited, he recognized the authority of the constituted representatives of Brotherhood of Railroad Trainmen to promulgate a revised and consolidated seniority list, and that by his action and conduct in prosecuting an appeal to the highest authority in said Brotherhood he recognized the jurisdiction and authority of such Brotherhood and its representatives to act in the premises, and that by his act and conduct in responding to subsequent requests by the defendant to work for it when his services were needed in the rotation established by such seniority list, he accepted and acquiesced in the provisions thereof and conditions thereby created, and that by his long continued acquiescence therein he is estopped to deny that he is bound thereby, and is estopped to maintain and prosecute this action.''

Upon the issues so made up, there was a trial had before a jury which resulted in a verdict in favor of the plaintiff in the sum of $4700. Judgment was duly entered in accordance with the verdict of the jury and from this judgment the defendant has appealed.

The defendant seeks to reverse the judgment in this case on five specifications of error presented under the head of points and authorities. The specifications are as follows:

## "I.

## "THE PEREMPTORY INSTRUCTIONS IN THE NATURE OF DEMURRERS TO THE EVIDENCE SHOULD HAVE BEEN GIVEN.

## "II.

## "THE ERRORS IN INSTRUCTIONS.

"(a)   If any case were made on which respondent was entitled to go to the jury, the court erred in giving plaintiff's instruction number one authorizing a recovery upon a finding among other things 'that said contract (the written contract negotiated with the brotherhood) thereafter and to the date of his suit remained in full force and effect, and that while said contract was in full force and effect, if you so find, the defendant company failed and refused to give work as a switchman,' etc., without requiring the jury to also find as one of the necessary elements of respondent's cause of action or right to recover, the controverted fact whether or not appellant continued to be the respondent's employer after August 1, 1930.

"(b)   The court also erred in refusing instructions 'D' and 'E' requested by the appellant in each of which, in slightly different language, appellant sought to have the court declare that if the appellant actually ceased to operate its property on August 1, 1930, and Union Terminal Railway Company then took charge and ever since exclusively operated the property, and with the knowledge of respondent then assumed and thereafter exercised exclusive direction and control of the respondent and other persons engaged in the operation of the property, there could be no recovery.

"(c)   Instruction one, given by the court at the request of respondent, is in direct conflict with instruction 'H,' given at the request of appellant which did require the jury to find that respondent was in the employ of appellant on October 10, 1930, as a condition of recovery.

## "III.

## "MISCONDUCT OF THE JURY.

"The verdict of the jury is directly in conflict with instruction 'G' given by the court at the instance of appellant. Said instruction is as follows:   (Abst. 988-9):

"'The court instructs the jury that if you find and believe from the evidence in this case that the plaintiff knew and had notice of the fact, if you find it to be a fact, that committee or representative of the Brotherhood of Railroad Trainmen claiming to be authorized

to represent the plaintiff, prepared the consolidated roster or seniority list of switchmen working on the two railroad properties described in evidence, and knew that committee or representative undertook to agree with the managing officer in charge of said railroad properties that such consolidated seniority list be accepted and put into effect by such managing officer in the assignment of switchmen for .work on said railroad properties, and if you further find that the management of said railroad properties accepted such list and agreement in good faith and notified the plaintiff and other switchmen of its intention to distribute the work in accordance with such list, by posting the same on bulletin boards on said railroad properties where notices affecting the work of switchmen, including plaintiff, were customarily posted, and that plaintiff, with knowledge of the foregoing circumstances, if you find he had such knowledge, worked until June 1, 1932, when and as called for work, in the order provided in such consolidated list (if you find he did) without any objection or protest on his part to the managing officers of said railroad properties, then under such circumstances, if you so find the facts from the evidence in the case, plaintiff is not entitled to recover.'

## "IV.

### "ERROR IN ADMISSION OF TESTIMONY.

"The court erred in permitting the respondent to abandon the claim to seniority rights provided in the provisions of the contract of March 10, 1928, pleaded in his petition, and to introduce evidence for the purpose of showing a customary seniority right, not merely to preference to right to work while employed, but to be re-employed after employment once terminated.

"The law does not permit a party to abandon a cause of action pleaded and to substitute therefor by proof a different sort of cause of action. He is bound by the allegations of his petition.

## "V.

### " THE VERDICT IS EXCESSIVE.

"As pointed out and discussed under the last sub-division of Point I of this brief, there is no evidence in the record which will support a verdict for anything more than merely nominal damages, and for this reason alone the judgment appealed from must be reversed."

In our further discussion, we will continued to refer to the respondent as plaintiff and the appellant as defendant so as to conform to the position in the trial court.

### OPINION.

Practically the same issues as are herein presented and growing out of the same contract herein involved were before this court

for consideration in McCoy v. St. Joseph Belt Railway Co., reported in 77 S. W. (2d) 175.

In the opinion by TRIMBLE, J., in the above case, the rights of an employee to base a cause of action for breach of the contract are clearly defined and set forth and clear and concise distinguishments are therein made as based upon the contract herein in issue. See aforesaid opinion, pages 179-182.

For the same reasons as were given in the case, *supra,* we conclude the plaintiff herein had a right to sue for breach of the terms of the agreement.

The question of the contract being unilateral was determined in the McCoy suit, *supra,* against the defendant. See the opinion pages 182-183. In the McCoy case, *supra,* all questions of estoppel are determined against defendant. See the opinion page 183.

Insofar as any of the above questions are involved in this suit, we adhere to our conclusions reached in McCoy v. St. Joseph Belt Railway Co., *supra,* and will not burden this opinion with further discussion of same.

As to the defendant's claim that a verdict should have been directed in its favor, we note that defendant lays stress upon its claim that the plaintiff had no right of action based upon the employment agreement declared upon. In the light of our opinion in the McCoy case, *supra,* and the comments made by us above, we conclude that defendant's assignment of error on that ground cannot be sustained.

For a consideration of the defendant's claim for a directed verdict as based upon the evidence, we, of course, must consider the evidence in its most favorable light to plaintiff in whose favor the jury verdict was given.

Paragraph (m) of Article IV of the agreement provides that after March 10, 1929, to terminate the agreement the party so desiring shall give thirty days' notice. Plaintiff presented substantial testimony that tended to prove that such notice as was required was never given. However, the defendant urges that evidence of the following tenure and effect shows termination of the agreement of March 10, 1928:

"(b) The respondent proved in attempting to establish his case, and the evidence is undisputed, that in July of 1930 the appellant posted a notice on its bulletin board that effective August 1, the operation of its property would be turned over to Union Terminal Railroad Company, whose officers would thereafter have charge of the Belt operations; that pursuant to such notice the so-called 'Grievance Committee' representing the switchmen then employed by the appellant and a similar Grievance Committee representing switchmen then employed by Union Terminal Railroad Company went into conference on the question of how the work should be

distributed between the two groups of switchmen when the Union Terminal Railroad Company took over the entire operations. The two committees deemed that a matter falling within the jurisdiction of the Brotherhood of Railroad Trainmen, and being unable to arrive at a definite conclusion, requested the President of the order to send a representative to assist them in arriving at an agreement. Pursuant to that request the witness, McQuaid, Vice President of the order, was sent to St. Joseph with full authority to represent the President, and as a result of extensive negotiations with the two committees he served a notice on the management of the Union Terminal Railroad Company which was then operating the Belt, that the two committees had agreed to consolidate the so-called seniority lists or separate rosters of switchmen into a single list, and that

" 'On account of the consolidation of the rosters . . . the employes of the St. Joseph Belt Railway have elected to work under the schedule in effect between Union Terminal Railroad Company and the Brotherhood of Railroad Trainmen.'

"A consolidated list submitted with that notice, was accepted by the management and put into effect. The communication and the seniority list accompanying it are shown in the abstract at pages 355-6, 359-60. There is no dispute about these facts nor about the facts that the new 'seniority list' with a minor correction made by Mr. McQuaid on October 12, was posted as the basis on which the plaintiff and all other switchmen would thereafter be called for work, nor is it contended that the men were not thereafter accorded so-called seniority rights and precedence in calls for work strictly in accordance with that list."

To an understanding of the point made, we will state that the record discloses that at the time the agreement in issue was entered into there was another corporation operating a railroad switching business in St. Joseph, Missouri. It is shown that this other corporation was the Union Terminal Railroad Company. It is shown that prior to July, 1930, that all of the capital stock of the defendant company and Union Terminal Railroad Company came into one ownership. It is shown that for economic reasons both companies were put under one management and that management was designated as the Union Terminal Railroad Company. It is further shown that while under one management, still the identity of each corporation was maintained in the operation.

There is shown competent evidence to the effect that the union to which this plaintiff belongs never accepted the terms of any agreement as claimed to have been made by the negotiations carried on by McQuaid and to the effect that McQuaid had no authority to act for the union to which plaintiff belonged. There is further evidence to the effect that the plaintiff never agreed to the terms and conditions of the McQuaid agreement referred to and never accepted the same.

From our examination of the evidence before us, there was evidence which presented issues of fact on all of the questions of fact raised by the pleadings in this case. We, therefore, must conclude that the court committed no error in submitting the case to the jury.

Defendant's assignment two is as to plaintiff's Instruction No. 1.

As to the point made, there is no evidence that plaintiff ever voluntarily quit the service.

Paragraph (g) of Article IV, set out above, provides the method of discharge. There is no evidence that plaintiff was so discharged.

As the instruction required the jury to find that at the date of the suit the contract was in full force and effect and while in full force and effect the defendant failed and refused to give plaintiff work, the instruction fully met the necessary elements of plaintiff's cause of action.

As the issues are presented in this case, the question of whether the contract as between plaintiff and defendant was in full force and effect determines the question of employment.

We conclude that the rule laid down in State ex rel. v. Ellison, 272 Mo. 571, 199 S. W. 984, as to the instruction containing necessary elements as to right to recover, is not violated in Instruction No. 1 complained of by defendant.

Defendant contends that Instruction No. 1 is in conflict with Instruction H given on behalf of defendant. Instruction H contains the following language: "That such alleged contract of employment was in force and effect on October 10, 1930, and remained in effect during all the time mentioned in evidence in this case, and *that the plaintiff was in the employ of defendant etc."* (Italics ours.)

We conclude that, under the issues as presented in the case at bar, the words indicated in italics add nothing to the language used above. In other words, the agreement between plaintiff and defendant cannot be in force unless plaintiff be employed under the terms and conditions of the agreement.

In defendant's assignment one (b), complaint is made as to refusal of its offered instructions D and E.

As before stated the ownership of the capital stock of the defendant and the Union Terminal Company had come into a common ownership.

It is evident from the showing made that each of these companies retains its corporate existence. The capital stock of each coming into one ownership, that ownership has placed the operation of the work under one general management, but at the same time maintaining the entity of the separate corporations.

Instructions D and E are drawn on the theory that the defendant corporation has ceased to operate its property. We conclude that evidence does not support such theory. The evidence warrants the

conclusion that the defendant is operating its property, but under a new management. The fact that the defendant is operating by and through the management with the Union Terminal, we conclude does not justify the conclusion that it has so ceased to operate that its agreement that is herein in controversy has been terminated. A corporation cannot nullify and abrogate its agreements by a change in operation management. We conclude that the mere change of management of operation, even with the knowledge of an employee working under an agreement, cannot be construed as a termination of the agreement.

Of course, an undisputed state of facts might arise, wherein all parties acquiesce and act under, that would abrogate the agreement. Such, however, is an issue of fact and such issue was submitted in the case by defendant's Instruction G and the jury have decided same against the defendant. We conclude that the court did not commit error in refusing instructions D and E.

Defendant in its third specification claims misconduct of jury in that defendant claims that the jury failed to follow its given Instruction G. Instruction G is as follows:

"The court instructs the jury that if you find and believe from the evidence in this case that the plaintiff knew and had notice of the fact, if you find it to be a fact, that committee or representative of the Brotherhood of Railroad Trainmen claiming to be authorized to represent the plaintiff, prepared the consolidated roster or seniority list of switchmen working on the two railroad properties described in evidence, and knew that such committee or representative undertook to agree with the managing officer in charge of said railroad properties that such consolidated seniority list be accepted and put into effect by such managing officer in the assignment of switchmen for work on said railroad properties, and if you further find that the management of said railroad properties accepted such list and agreement in good faith and notified the plaintiff and other switchmen, of its intention to distribute the work in accordance with such list, by posting the same on bulletin boards on said railroad properties where notices affecting the work of switchmen, including plaintiff, were customarily posted, and that plaintiff, with knowledge of the foregoing circumstances, if you find he had such knowledge, worked until June 1, 1932, when and as called for work, in the order provided in such consolidated list (if you find he did) without any objection or protest on his part to the managing officers of said railroad properties, then under such circumstances, if you so find the facts from the evidence in the case, plaintiff is not entitled to recover."

The defendant urges that Instruction G is in effect a peremptory instruction directing a verdict for defendant and urges that therefore

the failure of the jury to follow is such misconduct as impels a reversal.

It was early held by the Supreme Court of Missouri that although an instruction be erroneous and irrelevant, still if verdict is contrary to the instruction, no new trial will be granted. [Pratte et al. v. Judge of Court of Common Pleas, 12 Mo. 123.]

Instruction G is certainly out of harmony with the theory of law as presented in the plaintiff's instructions and the instruction is subject to an interpretation of presenting the same theory as is expressed in defendant's refused instructions D and E.

There is ample evidence that the plaintiff made complaint to Mr. Davis, the president of the defendant company, as to the working conditions being imposed upon him in violation of the working agreement declared upon by him. There is evidence that plaintiff knew of the McQuaid agreement but there is further evidence to the effect that McQuaid had no authority to make an agreement for the Brotherhood that was a party to the agreement in issue and evidence to the effect that neither the Brotherhood or plaintiff gave assent to the McQuaid agreement.

The plaintiff's evidence is clearly to the effect that the employment accepted by him after the McQuaid agreement was clearly not accepted by reason or under said agreement made by McQuaid.

The following questions and answers in paintiff's cross-examination are significant to-wit:

"Q. From whom did the men get their orders? A. From the Union Terminal officials.

"Q. And after that date, you at least, and so far as you know, the other men got no orders of any kind from Mr. Topping but they all came through the Union Terminal officials, either Mr. Van Vliet, or some other official? A. So far as I know.

"Q. That is all I am asking for—what you know. And in your own case, you were actually called for work and worked in the order that whatever consolidated list was on the bulletin board provided for at the time? A. I had to do that or quit and I had to work. I am a poor man and I have to work for a living."

Instruction G in effect presents an issue of estoppel. In the light of the above evidence and in the light of what was said in the McCoy case, *supra*, the issue of estoppel is out of this case. [See McCoy v. St. Joseph Belt Railroad Co., 77 S. W. (2d) 175, l. c. 183, par. (8).]

The question arises as to whether or not Instruction G is peremptory as claimed. An instruction that presents any issue of fact to the jury is not a peremptory instruction directing a verdict.

In Instruction G the defendant has certainly presented an issue of fact to be determined by the jury in that it requires a finding of fact as to acceptance of consolidated agreement in good faith by it.

The evidence is replete as to McQuaid's conduct and touching his authority to act for the Brotherhood of plaintiff. It is clearly shown that the agreement referred to in the instruction is the alleged agreement with McQuaid.

The defendant certainly thought that the question of its good faith was an issue of fact and it clearly presents that issue in the instruction it offered and received. The instruction is clearly erroneous. However, the errors are all clearly in defendant's favor.

We refuse to reverse the judgment by reason of the error for two reasons; first, we conclude the verdict of the jury is according to law and second, the instruction was more favorable to defendant than defendant was entitled to receive. [64 C. J. 681; Reardon v. Mo. Pac. Railroad Co., 114 Mo. 384.]

As to defendant's fourth claim of error, we are at a loss as to how to proceed.

Assignments of error as to admission of testimony, which does not disclose what objection was made thereto when offered, presents nothing for an appellate court to review. [Blair v. Patterson, 131 Mo. App. 122, 110 S. W. 615.]

Courts of appeal will overrule assignments of error as to admission of testimony where the testimony claimed to have been admitted in error is not pointed out. [Gardner v. Robertson, 208 Mo. 605, 106 S. W. 645; Sanzenbacher v. Santhuff, 220 Mo. 274, 119 S. W. 395.]

In an assignment of error, as to admission of testimony, the names of the witnesses and the substance of the testimony improperly admitted should be set out and the pages of the record where found should be indicated. [School District of K. C. v. Phoenix Land and Imp. Co., 297 Mo. 332, 249 S. W. 51.]

The defendant's assignment four does not comply with the above well established rules in any respect. After, in general terms, referring to a class of testimony admitted, the defendant states an abstract proposition of law as laid down in Moss v. Fitch, 212 Mo. 484, 1. c. 503-4, relative to substitution of cause of action.

We are confronted in this case with a printed record of over four hundred pages. We have gone through this record and are unable to say that any substitution of plaintiff's cause of action is shown and as to the evidence complained of and the objection made thereto at the time, we are unable to determine either by our research of the record or by anything directing as to same in defendant's brief. Under such circumstances, we cannot convict the trial court of error by reason of defendant's assignment four.

In assignment number five the defendant makes claim of excessive verdict.

If plaintiff has a right to recover, and the jury has so found, then he is entitled to the wages he would have received if the contract

had been lived up to, less such renumeration as he has been able to receive for such work as his diligence would enable him to earn.

There is evidence from which it can be concluded that with existing volume of business there was work sufficient to keep five engines employed. There is evidence from which it can be concluded that if the contract had been lived up to, that plaintiff's seniority considered, he would have had regular employment.

There seems to be no dispute about the amount of wages per day. There is evidence from which it can be concluded the number of days that plaintiff lost and evidence as to the amount that plaintiff earned during the entire period.

With the above facts before them, the jury brought in a verdict for $4700. From an examination of the evidence, we conclude that the verdict is not excessive.

In the course of presentation in defendant's brief, distinctions are mentioned as between the contract signed by the Brotherhood representatives and the *individual contract* with plaintiff. Complaint is made that the term ''collective bargaining agreement'' is used in the instructions.

In view of what this court said in the McCoy case, *supra,* l. c. 180-181, paragraphs (2) and (3), we conclude that such language does not present prejudicial error.

The plaintiff's cause of action for all practical purposes is based upon the written contract known and designated as the collective bargaining agreement.

The record in this case is voluminous. An examination of the record convinces us that there was a well presented case upon both sides. The whole showing indicates an orderly trial and we find no such prejudicial errors as would justify a reversal.

Judgment affirmed. All concur.