244 S.W.2d 37 (1951)
CRAIG
v.
THOMPSON.
No. 42719.
Supreme Court of Missouri, en Banc.
November 12, 1951.
Rehearing Denied December 10, 1951.
*38 Thomas J. Cole, St. Louis, E. A. Barbour, Jr., Springfield, for appellant.
Jo B. Gardner, Monett, for respondent.
CONKLING, Judge.
Jack L. Craig (plaintiff-respondent) had judgment in the circuit court against Guy A. Thompson, Trustee of Missouri Pacific Railroad Company (defendant-appellant) for $4050.00 for wages claimed lost by reason of the alleged wrongful discharge of Craig from his employment as a railroad brakeman. Upon defendant's appeal to the Springfield Court of Appeals plaintiff's judgment was reversed, that court ruling that "the trial court should have granted defendant's request for a directed verdict". See 240 S.W.2d 163, 166. Upon petition therefor, we thereafter ordered the cause transferred to this court. The parties filed additional briefs here and we heard the oral argument of counsel for each of the parties.
Plaintiff was employed on December 7, 1944, as a freight brakeman. He so remained in defendant's employment until May 30, 1947. His petition alleged he was "wrongfully and unlawfully discharged by defendant"; that he was "discharged for failure to answer a call for work"; that his "discharge was not for good and sufficient causes in accordance with the terms of Article 51" of his written contract of employment; that he was "not accorded a fair and impartial trial (investigation) by defendant" in violation of his contract; that his discharge was the result of the bias, prejudice and discrimination of Trainmaster Bishop and Operator Finley; and that in violation of plaintiff's contract the investigation of plaintiff was not the basis of the discipline administered, i. e., his discharge.
The defendant's answer denied plaintiff was wrongfully and unlawfully discharged; alleged plaintiff was discharged "for failure to protect service at St. Louis, 4:00 P.M. May 30, 1947, and also at various times prior thereto, and absenting himself from usual stopping place without authority, in violation of rules 703, 717 and 803 of defendant's Uniform Code of Operating *39 Rules" then in effect on the railroad; alleged plaintiff had a fair and impartial hearing as provided by Article 52 (set out in full) of the collective bargaining agreement, and was discharged for "good and sufficient causes" as provided by Article 51 (set out in full) of said agreement; alleged plaintiff was suspended May 31, 1947, for violation of Rule 703, 717 and 803 (set out in full); attached as an exhibit a transcript of the hearing and investigation and alleged that as a result of the hearing and investigation plaintiff was dismissed and discharged in writing by defendant's Superintendent for "failure to protect service at St. Louis, 4 P.M., May 30, 1947, and absenting yourself from usual stopping place without authority, in violation of Rules 703, 717 and 803."
The basic facts, determinative of this appeal, upon the question of whether plaintiff's discharge was or was not wrongful are not in dispute. It appears from plaintiff's testimony that he worked out of St. Louis, "I lived in St. Louis * * * and I stayed at the Y.M.C.A."; that he worked on the freight extra board out of defendant's 23rd Street station in St. Louis; that on May 29, 1947 at 4:54 P.M. he ended his run on a work train from Kirkwood at the defendant's 23rd Street station, went upstairs to the operator and his name was thereupon "marked up on the extra board at the bottom of the board"; that such board was "to protect the service * * * see that the trains went out"; that he then "resided at the (St. Louis) Y.M.C.A.", where he received his calls; that he then "told the operator at 23rd Street I was going home to get some clean clothes and would be back the next evening on 14"; that he examined "the status of the extra board * * * checked the crews * * I didn't think I would be first out until the 31st of May. Q. You didn't actually ask to lay off; you are not claiming that? A. No, sir; I thought I had time to get back"; and he then boarded a train and went to Centertown, Missouri, 139 miles west of St. Louis. While out of St. Louis plaintiff missed a "call" to go to work at 4:00 P.M. May 30, 1947.
Plaintiff further testified trainmen were "called" two hours before time to report, but that from Centertown (if defendant had known where he was) he could not "have gotten back to go to work * * * on two hours notice; * * *.
"Q. Isn't it a fact that when you left and went to Centertown, you just took a chance that you could get back and go to work before you were called? A. Yes, sir, I thought I could get back before I got called. * * *
"Q. Now the day that you left and went to Centertown, the 29th, you weren't registered at the Y.M.C.A., were you? A. No, sir. * * *
"Q. So far as the railroad was concerned at that time, that date, you had no place there in St. Louis where if you were subject to call, that he (the call operator) could have got in touch with you; is that right? A. No, sir, they couldn't."
Plaintiff also introduced in evidence and read the jury a transcript of his own testimony at his hearing or investigation held pursuant to Article 52, before Trainmaster Bishop on June 5, 1947, bearing plaintiff's signature, in part, as follows:
"Q. State in your own words, Mr. Craig, why you were not available for service at St. Louis Mo. on May 30th, for Extra train West called for 4:00 PM? A. I come in off the work train May 29th, was nine times out and I thought I would have time to go home and get clean clothes. I took a list of the crews that were in town, also the vacancies on them, thought I would have plenty of time to come down on No. 14 Friday evening. I called 23rd Street from Jefferson City and he informed me that I has (had) missed a call for Extra West at 4:00 PM. He told me that I would have to be off 24 hours, so I called up Sunday and he informed me that I was pulled out of service for formal investigation.
"Q. On May 30th, were you registered with 23rd Street Yard Office indicating you would be available when needed at your usual stopping place? A. Yes, sir.
*40 "Q. Did you secure permission to leave your usual stopping place? A. I told the operator down there that I was going home and he said he thought it would be alright.
"Q. What do you mean when you refer to home. Is that your usual stopping place at St. Louis? A. I refer to where I live, Centertown, Missouri.
"Q. What is the distance from Centertown to St. Louis? A. About 139 miles.
"Q. Rule 703 read. Account of the nature of your employment you are required to maintain residence at St. Louis in order to be available to protect the service. Is that correct? A. That is correct.
"Q. Rule 717 read. If you had proper authority to be absent then you would not have been marked on the brakeman's extra board as being available for service at 4:00 PM May 30th, would you? A. No, I would not.
"Q. Rule 803 read. Do you understand Mr. Craig, that in leaving St. Louis while you were marked up on the brakeman's board as being available for service is in violation of Rule 803? A. Yes, sir.
"Q. Do you understand that in leaving St. Louis, your usual stopping place, and not being in position to protect the service is also violation of Rule 803? A. Yes, sir.
"Q. Is there any reason why by applying to the proper authority you could not have been granted permission to be away for as long a period as necessary for you to attend to personal affairs? A. The reason I did not lay off, because I thought I would have enough time to come back before I missed a call.
No other witness testified at plaintiff's hearing. No other evidence was there adduced.
Respecting the allegation of his petition that he was "not accorded a fair and impartial trial (hearing or investigation) by defendant on June 5, 1947, before the Trainmaster, plaintiff at the trial testified:
"Q. Now at the time of this hearing you had no complaint of the unfairness or prejudice against you of this hearing, did you? A. Not of the hearing, no sir.
"Q. And at this time you have no complaint of any unfairness at this hearing? A. I was just dissatisfied with the discipline.
"Q. You had a fair hearing though? A. Yes, sir."
Respecting his previous violations of the Rules in missing calls plaintiff testified: "I never missed no more than any of the rest of them. I never missed very many." Plaintiff also testified that on one occasion Trainmaster Gordon had talked to him about "missing calls", and gave him a talking to and put him back to work; and that on another occasion Trainmaster Bishop had talked to him "about missing some calls and violating the rules." Plaintiff knew the three rules in question here.
There was no evidence from which a jury could have inferred plaintiff's discharge resulted from the bias, prejudice or discrimination of any one. Nor was there any evidence from which it was inferable that defendant's operator (whose duty it was to call brakemen to come to work) realized or understood that plaintiff was going beyond the call of the operator, if plaintiff's turn should come to be called for duty.
Rules 703, 717 and 803, and Articles 51 and 52 of the collective bargaining agreement (or contract of employment), referred to in the pleadings, the evidence and the briefs, are set out in full in the Court of Appeals opinion, 240 S.W.2d loc. cit. 164 and 165, are incorporated herein by reference thereto, but are not here set out at length. It was agreed that Rules 703, 717 and 803 were part of the Uniform Code of Operating Rules and that plaintiff, as an employee of defendant, was under such rules and governed thereby; and, that Articles 51 and 52 were a part of plaintiff's working agreement. Rule 703 provided that brakemen were required to devote themselves to the railroad service, reside where required and obey promptly instructions from the proper *41 authority. Rule 717 required that brakemen must not absent themselves from their duties without proper authority. Rule 803 required that brakemen must register at the ends of their runs and not leave their usual stopping place without giving notice where they can be found, and not leave the vicinity, when subject to call without permission from the proper officer. Article 51 provided that any trainman may be suspended for violation of rules and discharged for good and sufficient causes. Article 52 provided that before discharge a trainman shall be accorded a fair and impartial trial or investigation.
Under an agreement or contract between a railway labor union and an employer, an employee coming under that contract may recover if his discharge was wrongful, even though engaged only for an indefinite period. Hall v. St. Louis-San Francisco R. Co., 224 Mo.App. 431, 28 S.W.2d 687. A cause of action for a wrongful discharge from employment of necessity must be founded upon a contract of employment. Clark v. Cincinnati, N. O. & T. P. Ry. Co., 258 Ky. 197, 79 S.W.2d 704; 56 C.J.S., Master and Servant, § 48, page 441. No cause of action for wrongful discharge arises where the employer, in good faith and in conformity with the provisions of the employment contract, discharges the employee for the clear or confessed violations of the rules. Caulfield v. Yazoo & M. V. Railroad Co., 170 La. 155, 127 So. 585; St. Louis, B. & M. Ry. Co. v. Booker, Tex.Civ.App., 5 S.W.2d 856. See also, Adams v. Southern Pacific R. Co., 204 Cal. 63, 266 P. 541, 57 A.L.R. 1066 and 56 C.J.S., Master and Servant, §§ 32, 48, pages 416 and 442. An employer may discharge an employee when the latter fails to appear to perform his duty even though no injury results to the employer. Bank of America, Nat. Trust & Savings Ass'n v. Republic Productions, 44 Cal.App.2d 651, 112 P.2d 972. It is widely held that absence from the place of his employment which prevents an employee from performing the work for which he is employed is sufficient justification for discharge. In every contract of employment it is implied that the employee will obey the lawful and reasonable rules, orders and instructions of the employer, and disobedience of such known rules justify the employee's discharge. McCain v. Desnoyers, 64 Mo.App. 66; Wood on Master & Servant, Sec. 119, Lindner v. Cape Brewery & Ice Co., 131 Mo.App. 680, 111 S.W. 600; 56 C.J.S., Master and Servant, § 42, page 432; Caulfield v. Yazoo & M. V. Railroad Co., supra; St. Louis, B. & M. Ry. Co. v. Booker, supra; Robertson v. Panhandle & Santa Fe Ry. Co., Tex.Civ.App., 77 S.W.2d 1078, 1080; Farmer v. First Trust Co., 7 Cir., 246 F. 671, L.R.A. 1918C, 1027; Swilley v. Galveston, H. & S. A. Ry. Co., Tex.Civ.App., 96 S.W.2d 105; Greene v. Hawaiian Dredging Co., Cal.App., 151 P.2d 560; Id., 26 Cal.2d 245, 157 P.2d 367; Stoffel v. Metcalfe Const. Co., 145 Neb. 450, 17 N.W.2d 3; Watkins, Inc., v. Cochran, 292 Ky. 846, 168 S.W.2d 351; 35 Am.Jur. Master and Servant, pp. 514, 478, 479. Whether a certain state of facts as to which there is no dispute amounts to a legal justification for discharge, i. e., whether the discharge was or was not wrongful, is a question of law for the court. But where the facts are in dispute as to whether the discharge was or was not wrongful, the question is always one for the jury under proper instructions. Carson v. McCormick Machine Co., 36 Mo.App. 462, 468; Wood on Master and Servant, Sec. 119.
We come now to consider defendant's contention that the trial court erred in refusing to sustain defendant's motion for a directed verdict. At the outset we are confronted with the contention made in plaintiff's brief that defendant "had the burden of proving that respondent's discharge was justified". Plaintiff there argues that he made a prima facie case by showing in evidence his employment, discharge and resulting damages; that defendant in no event was entitled to a directed verdict because the jury must pass on the evidence of defendant in support of the allegation of the answer that plaintiff's discharge was justified; and that if defendant's evidence so offered for that purpose *42 constituted no defense, that then plaintiff was entitled to a directed verdict. To support such an argument plaintiff cites Johnson v. Thompson, Mo.App., 236 S.W.2d 1. That is indeed strange doctrine.
The Johnson v. Thompson case, supra, was one for alleged wrongful discharge of Johnson, a railroad conductor, for an alleged violation of Rule G. Defendant there denied the discharge was wrongful and the answer alleged it was for good cause for rule violation. In the course of the Johnson opinion, 236 S.W.2d loc. cit. 8, first column, the Springfield Court of Appeals said that the contract of employment, its terms, the discharge, and the defendant's refusal of plaintiff's offer to continue his employment were admitted. That opinion then said: "We think this evidence made a prima facie case. The justification of the discharge was affirmatively pleaded in defendant's answer and the burden of establishing this defense was upon the defendant. * * * [loc. cit. 13] This was an affirmative defense pleaded in the answer of the defendant and the burden rests upon it to show by preponderance or greater weight of the testimony that the discharge was for good and sufficient causes." That ruling in the Johnson case was a clear and unequivocal misstatement of the applicable law and is expressly overruled.
The gist of the Johnson case, and of the instant case, is the alleged wrongful discharge from employment. In the Johnson case, and in this case, the answer denied that the discharge was wrongful, and each answer further alleged the discharge was for good cause for rule violation. Reduced to its simplest terms, plaintiff's theory of this case is, and he alleges, that he has a cause of action against defendant because he was wrongfully discharged. Unless his discharge was wrongful he had no cause of action. Having alleged his cause of action was wrongful, and not being entitled to recover unless his discharge was wrongful, the burden of proving that his discharge was wrongful is upon and remains upon plaintiff. 56 C.J.S., Master and Servant, § 53, pages 454, 459. Such burden of proof cannot shift. Cramer v. Mack, 8 Mo.App. 531; Jordan v. J. R. Weber Moulding Co., 77 Mo.App. 572, 577, 578. The burden of proving an allegation is upon the party who makes such allegation. Some other cases decided by the St. Louis Court of Appeals seem to have reached a contrary conclusion in cases involving a contract for a definite term. See Maxton v. Gilsonite Const. Co., 134 Mo.App. 360, 114 S.W. 577; Vernon v. Rife, Mo.App., 294 S.W. 747, 750; Meyer v. Weber, 233 Mo.App. 832, 109 S.W.2d 702. In the Maxton case, plaintiff was employed for the definite term of one year. In the Vernon case, plaintiff was employed for the theatrical season of 35 weeks. In the Meyer case the contract was for a period of five weeks. In each case defendant terminated the contract before the end of the contract period. We think that distinguishes those cases.
Defendant's answer here denied the discharge was wrongful. The answer went further and alleged the discharge was justified because in violation of defendant's operating rule. Such last stated allegation does not relieve plaintiff of his burden to prove the discharge was wrongful; nor did it convert the issue into an affirmative defense which defendant must prove. Defendant may content himself and offer no proof at all. If he desires defendant may make proof that the discharge was in fact justified. But the burden of proving the very thing that gives rise to his cause of action, the heart of his cause of action, i. e., that the discharge was wrongful remains always upon the plaintiff. Citation of authority is unnecessary. And if the proof does not show the discharge of plaintiff was wrongful, plaintiff has made no case which the court can submit to the jury. We overrule plaintiff's contention that defendant "had the burden of proving that respondent's discharge was justified". It must be proved that plaintiff's discharge was wrongful. Unless that is proved plaintiff's case fails. Defendant may, if he desires, prove the discharge was justified. It follows that if the evidence in the record before us fails to make a submissible case, *43 the motion for directed verdict should have been sustained.
The evidence offered by defendant in no wise tends to support the allegations of plaintiff's petition. What then is the effect of plaintiff's testimony?
Plaintiff himself admits, and establishes by his own personal testimony, that when he finished his run at 4:54 P.M. on May 29, 1947, his name was placed on the extra board; that he had theretofore received his "calls" at the St. Louis Y.M.C.A., but on this date was not even registered at the Y.M.C.A.; that notwithstanding there was no place in St. Louis where his employer could "call" him, he left St. Louis and went 139 miles to Centertown; that he just "took a chance" that he could get back before he was "called" thinking that he would have "plenty of time"; that he did not "ask to layoff", nor secure permission to leave, nor state that he was leaving St. Louis; that under Rule 703 he was required to maintain his residence in St. Louis in order to be available to protect the service, but that in violation of that Rule he did not do so; that if, as required by Rule 717, he had had proper authority to be absent, he would not have been marked on the brakeman's extra board as being available for service at 4:00 P.M. on May 30th; that in leaving St. Louis while being marked on the brakeman's extra board as being available for service, he violated Rule 803; that he was accorded a fair investigation, or hearing, or trial as provided in Article 52, supra; that prior to May 29 he never missed very many calls, "no more than the rest of them"; and that his trainmasters had talked to him about missing "calls".
Our search of this record discloses no evidence from which a jury could infer and find that plaintiff's discharge from the service of the railroad was wrongful or unlawful. In fact the contrary appears. Viewed most favorably to him, plaintiff's own testimony shows that he repeatedly violated Rule 803 of his employer. In its very nature the operation of a railroad of necessity requires strict compliance upon the part of the employees with the employer's rules. Cases above cited. In no other way can a railroad be operated. An essence of the instant employment relation was the presence of the plaintiff at the time and place appointed, and the then rendition by him of the service he was engaged to and had agreed to perform. Dayvault & Newsome v. Townsend, Tex.Civ.App., 244 S.W. 1108, 1110. Plaintiff does not even suggest that the rules shown in evidence were not reasonably designed for the continuous, timely, orderly and expeditious operation of trains. The rules obviously are not so harsh that they are opposed to public policy.
And, Articles 51 and 52 (of what plaintiff calls his "contract of employment", and which defendant calls the "collective bargaining agreement", but which, the parties agreed, were part of plaintiff's working agreement) are clearly not contrary to public policy. Clearly those Articles provide that after a fair and impartial trial (or investigation) the Superintendent may discharge for good and sufficient causes. Article 51, supra, provided that plaintiff could be discharged for (among other things) "habitual neglect of duty, gross violation of rules and orders", etc. We rule as a matter of law that under the facts now before us as confessed by plaintiff his discharge was for good and sufficient causes, and under Article 51 his employer had a right to discharge him therefor. Plaintiff conceded that he had a fair hearing. Under the instant circumstances, plaintiff is not entitled to have a jury pass upon the question of whether his confessed violation of the operating rules of his employer warranted his dismissal, for the jury may not here substitute its opinion for the conclusion of plaintiff's employer upon that question. Caulfield v. Yazoo & M. V. R. Co., supra; St. Louis, B. & M. Ry. Co. v. Booker, supra; Adams v. Southern Pacific Ry. Co., supra.
Plaintiff cites and relies upon such cases as McGee v. St. Joseph Belt Ry. Co., 232 Mo.App. 639, 110 S.W.2d 389; Id., 233 Mo.App. 111, 93 S.W.2d 1111; State ex rel. St. Joseph Belt R. Co. v. Shain, 346 Mo. 1098, 145 S.W.2d 131; Tennison v. St. Louis & San Francisco R. Co., Mo.Sup., 228 S.W.2d *44 718; Sparks v. Thompson, Mo.App., 161 S.W.2d 977; Baron v. Kurn, Mo.App., 153 S.W.2d 405; Id., 349 Mo. 1202, 164 S.W.2d 310, 142 A.L.R. 787; McCrory v. Kurn, Mo.App., 101 S.W.2d 114; Butner v. Union Pacific R. Co., 236 Mo.App. 1134, 163 S.W.2d 100. The cases cited by plaintiff in his briefs filed have been carefully examined. An examination of the cases plaintiff has cited clearly and readily distinguish them from the instant case. In the McGee, Sparks, Baron and McCrory cases the issue was the alleged failure of the railroad to respect the seniority rights of the plaintiffs; the Tennison case ruled the admissibility of certain evidence in a wrongful discharge case; and in the Butner case it clearly appeared plaintiff did not have a fair and impartial hearing before the trainmaster. But in this case in his hearing before the trainmaster (which plaintiff concedes was a fair hearing) he confessed the violations of the rule, and upon the trial in the court below he again confessed them. There is no evidence here to the contrary.
Plaintiff also cites Moore v. Illinois Cent. R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. That case merely reversed the opinion of the United States Circuit Court of Appeals for the Fifth Circuit in a case, 112 F.2d 959, wherein the latter court had refused to follow the ruling of the Mississippi Supreme Court in the latter court's ruling, 180 Miss. 276, 176 So. 593, construing a Mississippi Statute of Limitations. See also, D.C., 24 F.Supp. 731. And the facts of the Moore case clearly distinguish it from the instant case. In that case the Illinois Central, through the Yazoo and Mississippi Valley Railroad took over the operation of the Alabama & Vicksburg Railway. A consolidation of switch-yards led to the issuance of a new seniority roster in the consolidated yards. Moore's number was moved from 37 to 52. He thereafter continued to work for some time. He then sued the Yazoo and Mississippi Valley Railroad for partial unemployment based upon his old contract. Moore lost the case. See, Moore v. Yazoo & M. V. R. Co., 176 Miss. 65, 166 So. 395. He was then absent from work a year on sick leave; he then reported for work, and was discharged as an unsatisfactory employee. Upon his hearing before the Illinois Central Superintendent he was discharged because he had prosecuted the former suit. The facts sufficiently distinguish the Moore case from the one now before us.
The judgment appealed from must be reversed.
HOLLINGSWORTH, DALTON, LEEDY, TIPTON, JJ., and ELLISON, C. J., concur.
HYDE, J., concurs in separate opinion filed.
HYDE, Judge.
I concur in the opinion of CONKLING, J., herein. However, my views are somewhat different about plaintiff's contentions that he made a prima facie case by showing his employment, discharge and resulting damage and that the burden of proving just cause for discharge was on defendant as an affirmative defense. I fully concur in the holding that Johnson v. Thompson, Mo.App., 236 S.W.2d 1 is incorrect in saying this is an affirmative defense and agree that such ruling therein must be overruled. Nevertheless, I do think that under certain circumstances a prima facie case of breach of contract is made by an employee by showing his employment, his discharge before the time contemplated by his contract of employment, and resulting damage as held by Meyer v. Weber, 233 Mo.App. 832, 109 S.W.2d 702; Vernon v. Rife, Mo.App., 294 S.W. 747; Maratta v. Charles H. Heer Dry Goods Co., 190 Mo.App. 420, 177 S.W. 718; Haxton v. Gilsonite Const. Co., 134 Mo.App. 360, 114 S.W. 577. See also Labatt's, Master and Servant, Secs. 271, 351 and 354.
It is my view that what these cases mean, and all that can properly be held, is that proof of such facts shifts only the burden of evidence to the defendant, not the burden of proof; and that the burden of proof, the risk of non persuasion, see McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 92 A.L.R. 641, remains with plaintiff. *45 As to burden of evidence see also 20 Am.Jur. 134-137, Secs. 131-133. However, plaintiff herein cannot gain any benefit from that rule because, instead of proving a prima facie case, he conclusively proved that he had no case. He did this by proving his own violation of his employer's rule which was good cause for discharge under his contract of employment.