Maxine S. STOKES, Executrix of the Estate of Russell T. Stokes, Plaintiff-Appellant,

v.

ENMARK COLLABORATIVE, the architectural division of Emmenegger Construction, Inc., Defendant-Respondent.

No. 41799.

Missouri Court of Appeals, Eastern District, Division Four.

May 25, 1982.

Lucas & Murphy, Donald B. Balfour, St. Louis, for plaintiff-appellant.

Donald W. Bird, St. Louis, for defendant-respondent.

SMITH, Presiding Judge.

Plaintiff appeals from a judgment against him based upon a jury verdict in an employment contract case. We affirm.

Plaintiff[1] was an architect. In late 1970 he went to work for defendant. Plaintiff's second amended petition sought relief pursuant to a written agreement. At trial, Plaintiff testified that his employment was pursuant to an oral agreement subsequently reduced to writing after he began his employment. The agreement as written provided that plaintiff would receive a salary of $300 per week plus ⅓ of the profits of the division of defendant for which plaintiff worked and that plaintiff would be entitled to 30 days notice of termination. Defendant's evidence was that plaintiff was hired pursuant to an oral agreement for a salary of $300 per week; that thereafter defendant, to provide plaintiff with added incentive to generate business, prepared the written agreement relied upon by plaintiff; that defendant signed the agreement and tendered it to plaintiff for acceptance; and that plaintiff never accepted the agreement until after his termination in early 1972. The new agreement, in addition to the profit-sharing and termination provisions, also required a 30-day notification of termination by the employee and that any "new work or contracts that Architect should acquire" would be brought into the company and performed as company work.[2] Plaintiff's verdict-directing instruction at trial hypothesized that the terms of plaintiff's employment were orally agreed to, that plaintiff commenced work pursuant to those terms, that the oral agreement was subsequently reduced to writing and that defendant did not pay plaintiff as provided

1. "Plaintiff" as used in this opinion refers to Russell T. Stokes, Jr. During appeal Mr. Stokes died and his personal representative has been substituted as the named plaintiff.

2. An exception was made for "previously existing contracts specified below." There was nothing specified "below."

by the agreement.[3] Plaintiff's theory of recovery, relying upon *Vondras v. Titanium Research and Development Co.*, 511 S.W.2d 883 (Mo.App.1974), was that plaintiff by entering into employment accepted the oral agreement which was subsequently reduced to writing and that no further acceptance of the written agreement was necessary.

Defendant conversed generally the verdict-directing instruction and additionally requested and received an affirmative defense instruction denying plaintiff recovery if he did not "substantially perform his promises as set forth in the written document." This defense was based upon the statement in *Rexite Casting Co. v. Midwest Mower Corp.*, 267 S.W.2d 327 (Mo.App.1954) [14, 15] that: "A party to a contract cannot claim its benefits where he is the first to violate it." Plaintiff's first attacks are leveled against the affirmative defense instruction.

▇ Initially, plaintiff contends the instruction lacked evidentiary support because there were no material failures to perform. The *Rexite* statement heretofore quoted is limited to material failures of performance. *Blythe v. Blythe*, 586 S.W.2d 393 (Mo.App.1979) [4]; Restatement of Contracts 2d §§ 237 and 241. Defendant points to several facets of the evidence to establish that plaintiff was in material breach of his contract with defendant, i.e.: (1) Plaintiff frequently was absent from his place of employment on Fridays and was on occasion needed on that day, (2) plaintiff refused to report for work until 9:00 a. m., (the company's hours began at 8:00 a. m.), creating morale problems in the office, (3) plaintiff would design and recommend buildings of a non-pre-engineered steel construction contrary to defendant's efforts to increase its business in pre-engineered steel construction, (4) plaintiff was involved in private architectural work other than previously existing contracts. There is clearly evidentiary support for the first three complaints, each of which would be sufficient to allow a jury to find a material breach by plaintiff.[4] Implicit in every employment contract is a promise of the employee to serve and devote his best efforts to the business of his employer. *Vondras v. Titanium Research and Development Co., supra* [2, 3]. Absence of an employee from his place of employment which prevents him from performing the work for which he is employed is a breach of that promise. It is implicit in every contract of employment that the employee will obey the lawful and reasonable rules, orders and instructions of the employer and failure to do so is a breach of the contract of employment. *Craig v. Thompson*, 244 S.W.2d 37 (Mo. banc 1951) [3–7]. The evidence here was sufficient to establish that plaintiff did not adhere to the working days and hours requested by the employer and that he allowed his personal preferences for certain types of construction to interfere with the employer's efforts to develop its business in a desired direction. Plaintiff, seeking to avoid the impact of *Craig, supra*, cites us to cases from other jurisdictions which impose a different standard of conduct on those in positions requiring greater responsibility and discretion than on those in positions that do not. *See Goudal v. Cecil B. DeMille Pictures Corp.*, 118 Cal.App. 407, 5 P.2d 432 (1931); *Thomas v. Bourdette*, 45 Or.App. 195, 608 P.2d 178 (1980). But we do not find those cases helpful to plaintiff. Both recognize that regardless of the responsibility and discretion of the employee he may not intentionally violate the reasonable rules of his employer. Whatever the level of plaintiff's responsibility and discretion, his employer could expect him to comply with its reasonable rules on working hours. Further, plaintiff's written agreement of employment specifically called for him "[n]ot to take any action or make decisions

---

3. Specifically, plaintiff's evidence, undisputed, was that defendant paid him none of the profits and gave him no notice prior to termination. Defendant denied there were any profits. Much of the evidence at trial dealt with the profit question.

4. The fourth complaint has less evidentiary support, but in view of the first three complaints, we need not decide whether it had sufficient evidentiary support.

on matters that directly affect Company as to policy, reputation or expenses without Company's previous consent." He was employed to design buildings compatible with the business of his employer, his personal preferences to the contrary notwithstanding. His refusal to do so was a breach of his contractual obligations. We find the affirmative defense instruction was supported by the evidence.

■ Plaintiff also challenges the instruction because it failed to define the term "substantially performed." [5] The matter has not been preserved for review as it was not raised during the trial nor included in the motion for new trial. *Chambers v. Kansas City*, 446 S.W.2d 833 (Mo.App.1969) [8, 9]. Plaintiff seeks to have us review the matter as plain error.[6] At the time of trial, there was no MAI definition of "substantially performed." Now see MAI 16.04 [1980 New]. There is case law, however, that holds the phrase to be a "term of art" which should be defined in the instructions. *Forsythe v. Starnes*, 554 S.W.2d 100 (Mo. App.1977) [5–7]; *Yamnitz v. Polytech, Inc.*, 586 S.W.2d 76 (Mo.App.1979) [6, 7]. We are not convinced, however, that it is so plainly necessary of definition that the failure of the trial court to define it without request creates a "manifest injustice or miscarriage of justice." Rule 84.13(c). We decline to invoke the plain error rule. We also decline to review plaintiff's non-preserved allegation of error that the instruction is erroneous because it failed to hypothesize the evidentiary facts from which the absence of substantial performance could be derived. And see Rule 70.02(e).

■ Plaintiff also raises as plain error the giving of a converse to the verdict directing damage instruction, which constituted the giving of an impermissible second converse. The objection was not raised at trial nor in the motion for new trial. It has not been preserved for appellate review and

we decline to review it as plain error. *Robinson v. St. John's Medical Center, Joplin*, 508 S.W.2d 7 (Mo.App.1974) [7–9]. Plaintiff did preserve an objection that the "second converse" was an inconsistent and conflicting instruction. We fail to see how. The instruction was a true converse to plaintiff's damage instruction. How that could make it inconsistent with a proper affirmative defense instruction, as plaintiff claims, is not apparent.

■ Plaintiff's remaining points deal with evidence claimed to have been erroneously admitted. The first item relates to testimony concerning the disappearance of an employee of defendant. It was this employee to whom plaintiff testified he delivered his signed copy of the employment agreement. Defendant produced evidence that the employee had left its employment without warning and that her whereabouts were unknown. The employee left prior to plaintiff's termination and her disappearance was common knowledge in the company. On appeal plaintiff contends that under his theory of the case, as submitted to the jury, acceptance by signing and return of the employment agreement by him was immaterial, as he was seeking recovery on the basis of the oral agreement accepted by the commencement of employment. Therefore, the testimony concerning the employee's disappearance was irrelevant. Plaintiff's petition, however, was not based upon the theory submitted to the jury, but rather upon breach of the written agreement. When the evidence was admitted the question of whether plaintiff had accepted the written agreement was still a viable issue in view of the petition. Defendant's evidence was that no acceptance occurred until after plaintiff was terminated. In that posture evidence that the employee to whom plaintiff claimed he tendered his acceptance was no longer available to testify, and was known to plaintiff not to be available, was relevant in assessing the credibility of his

---

5. This challenge is curious inasmuch as plaintiff's verdict-directing instruction utilized the same phrase without definition.

6. We have some doubt that plaintiff has properly raised the "plain error" contention by first addressing it in his reply brief, thereby denying defendant the opportunity to challenge its applicability. We do not decide that question.

evidence of acceptance. If the evidence subsequently became irrelevant plaintiff should have requested a withdrawal instruction. He did not. We find no abuse of the trial court's broad discretion in admitting the evidence. *Aiple v. South Side National Bank in St. Louis*, 442 S.W.2d 145 (Mo.App.1969) [7, 8].

■ Plaintiff's final point is that the trial court erred in admitting certain testimony concerning architectural fees for services comparable to those performed by plaintiff. Plaintiff had introduced evidence that the American Institute of Architects minimum fee schedules would have produced a certain amount of revenue for the architectural division which in turn established a level of profits for that division to which plaintiff was entitled to one-third. Defendant's evidence was that under its overall operation as a "design-build" contractor the fees which it could charge for its architectural division, for whom plaintiff was employed, were less than those standardly charged by independent architects and less than the minimum fees contained in the A.I.A. schedules. Plaintiff's contention of irrelevance is based upon his interpretation that the written agreement mandated use of the A.I.A. standards.[7] The agreement did not so mandate. The A.I.A. standards were only a guide and expert testimony of reasonable fees for the work performed by plaintiff in a business such as defendant's was relevant in defense of plaintiff's theory of damages.

Judgment affirmed.

SATZ and PUDLOWSKI, JJ., concur.

---

**7.** That provision read: "[A]ll fees will be determined by Architect and Company. A.I.A. standards and reasonable hourly rates shall be used as a basic guide. The intention is to obtain the maximum allowable, but fair fee, while not losing the contract to service the client."