O’NIELL, C. J.
 

 The plaintiff was employed as conductor on a passenger train of -the defendant railroad company at a salary of $430 per month. He had been in the service of the company for 37 years continuously, and was one of the senior conductors, with the expectation of retiring some day on a pension. He was discharged for an alleged violation or neglect of a rule of the company by failing to-include in his report to -the auditor, of the passenger receipts of one of his trips, the fare of a passenger who rode on his train, and by failing to give a satisfactory account of the omission. He brought this suit for damages, averring that he was not given a hearing on' the charge, that he was not guilty, and that, even if he was negligent, as charged, it was a trivial matter and not one which would justify his dismissal from the service. He claimed $10,-000 for mental suffering, $10,000 for injury to his. reputation by the suspicion cast upon his character for honesty and integrity, $10,-000 for the loss of his prospect of retiring upon a pension, and $430 per month for the loss of salary from the date of his discharge until the date when he would be reinstated or. the date of the final judgment in the case. The district court gaye judgment in -favor ¡of the plaintiff for $430 per month from the .daté of his discharge until the date of the judgment of the district court, and rejected the demand for the $30,000 damages. The defendant has appealed from the decision; and the plaintiff, answering the appeal, prays for
 
 *158
 
 an' amendment of the judgment by allowing his claim of $10,000 for mental suffering and $10,000 for injury to his reputation, and by allowing interest on the judgment for $430 per month, and extending the payments until the judgment of this court becomes final.
 

 The charge made against the plaintiff was that a passenger rode on his train, from a station called Istrouma to a station called Walker, on the date stated, and that no record of his fare appeared on the report of passenger receipts of the trip', rendered to the auditor by the plaintiff. The amount of the fare was only 66 cents. The passenger referred to was a colored man named Forest, who was put aboard the train by the division superintendent for the purpose of .checking up the conductor’s observance of his . duties. The superintendent testified that he. saw Forest board the train at Istrouma, and the trainmaster testified that he saw Forest descend from the train at Walker. There is no reason to doubt that Forest made the trip; but it is not charged that the plaintiff collected and kept the fare, the charge being merely that he made no record of the fare in his report to the auditor of the passenger receipts of the trip, and the inference being that the plaintiff failed in his duty to see the passenger and collect the fare.
 

 The rule which the plaintiff was accused of. •violating, being one of the rules governing ■his contract of employment, was as follows:
 

 “Conductors must collect proper transportation from every person using the trains of this company and account for same as required under the rules. For each cash fare paid, the conductor shall make out a cash fare slip before proceeding with 'the collection: of other fares or tickets. This applies equally to conductors, and collectors authorized to collect fares. No deviation therefrom will be permitted. Superintendents must see that the provisions of this circular are carried out literally, and will accept no excuse for failure to do so.”
 

 The rule which the plaintiff invoked, and which is in the printed “Schedule of Wages and Rules for Conductors,” which formed the agreement between the railroad company and the Order of Railway Conductors, was as follows:
 

 “Conductors will not be dismissed or suspended from the Company’s service without just cause; investigation will be conducted ordinarily within ten days. In case of suspension or dismissal, if the employee thinks his sentence unjust, he shall have the right within ten days to refer his ease by written statement to the Superintendent. Within ten days from the receipt of this notice, his case shall have a thorough investigation by the Superintendent, at which he shall be present. In case he shall not be satisfied with the result of said investigation, he shall have the right to appeal to the General Superintendent and from him to the General Manager. In case the suspension or dismissal is found to be unjust he shall be reinstated and paid for time lost. The result of the investigation shall be made known within ten days. A conductor called in for investigation may be accompanied by a conductor of his choice, in the employ of the Company, who may be present during the entire investigation, and ask such questions as might develop facts pertinent to the case. If the evidence at any investigation is transcribed, copy will be furnished Local Chairman on request.”
 

 Some days after the day on which the passenger, Forest, rode, on the plaintiff’s train, the division superintendent sent for the plaintiff, and requested him to bring his train book.
 
 *160
 
 On plaintiff’s entering the office of the superintendent, the latter informed plaintiff that he (the superintendent) was about to make an investigation into his having made an incorrect report to the auditor on the date stated, and asked plaintiff if he desired to have a representative present. Plaintiff declined the privilege. The superintendent then produced a copy of the report which plaintiff had rendered to the auditor, and asked if it was a correct copy of the report. Plaintiff admitted that the document was a correct copy of his report. Then the superintendent stated that he had knowledge that a passenger had ridden from Istrouma to Walker on the date in question, and, directing plaintiff’s attention to the fact that his report did not show the collection of a fare from the passenger, asked him to explain the matter. Plaintiff looked over the copy of his report, and stated that the passenger might have been a deadhead, and finally stated that he was sure that no passenger had ridden, on the train that day from Istrouma to Walker without paying his fare. The superintendent asked the plaintiff if he had any further explanation or statement to make, and the latter replied that he had nothing to say. What transpired at the investigation was taken down steno-graphically by the superintendent’s secretary and transcribed. The result of the investigation was that the superintendent discharged the plaintiff. lie appealed to the general superintendent of the company, and,, at the hearing before the general superintendent,-was accompanied and represented by a member of the Order of Railway Conductors. The general superintendent affirmed the order of the division superintendent, discharging plaintiff; and he then appealed to the general manager of the company, with the same result.
 

 It is contended by appellant’s counsel that the investigation made by the division superintendent was not a thorough investigation, or such as the rule which we have quoted required. No such complaint, however, was made by the plaintiff previous to the institution of this suit. On the contrary, he testified as a witness in the case that, when he was informed by the division superintendent that the investigation' was about to be made, and was asked whether he desired a representative, he understood that he was entitled to be accompanied and represented by a member of the Order of Railway Conductors, but declined the privilege, and did not ask for or desire a postponement of the investigation to enable him to be better prepared to explain matters.
 

 It appears therefore that the discharge of the plaintiff was done according to the rules governing his employment. The railroad business is one which in its very nature requires strict obedience of the rules of the company on the part of the employees. The rule which requires conductors to report and account for the fares of all passengers who ride on their trains, and which admits of no deviation or excuse, is not so harsh as to be opposed to public policy. And there is nothing contrary to public policy in the agreement between the railroad company and the Order of Railway Conductors that, after a full and fair investigation, the division superintendent of the railroad, and after him the general superintendent, and after him the general manager of the road, shall decide finally on the justness of a suspension or dismissal of a conductor.
 

 The Court of Civil Appeals of Texas, very recently, decided in favor of the railroad company a ease very similar to this — St. Louis, B. & M. Ry. Co. v. Booker, 5 S.W.(2d) 856,
 
 *162
 
 859. Booker was discharge! from the position of ear inspector, and the question of justness of his discharge was submitted to and decided by the railroad officials designated in the contract of employment as having the authority to decide such matters. The court held that the agreement was valid, and that the decision of the railroad officials designated in the contract as having the authority to decide the matter, after a thorough and honest investigation, was final. The court said:
 

 “In this situation, when a railway company in effect says to its employees, ‘While the company is not bound to give you employment for any definite length of time, and you are not bound to remain in the service for any definite time, the company agrees that, as long as you continue in its service, you will not be unjustly discharged, and, if it be found that yon have been so discharged, you will be reinstated in the service and paid for the time lost by such disehafge,’ we see no reason for holding such agreement invalid. This promise of the employer is a part of the consideration inducing employees to enter and remain in the service, and the continued performance of the duties of their employment is a valuable consideration to the railway company.
 

 “We cannot agree with' appellant that the agreement is unenforceable for lack of mutuality or want Of consideration.
 

 “We agree with appellant in its next contention, that, under the contract of employment alleged and proven by appellee, the question of whether appellee’s discharge was unjust should not have been submitted to the jury. The provisions of the contract embodied in rules 35 and 36, before set out, clearly require that the question of the justness of an employee’s discharge must be determined in the manner and by the tribunal designated in the rules. The evidence shows that the procedure provided for in these rules was followed in adjudication of the question. The right of the appellee to have any other tribunal than those designated in the agreement determine the question of justness of his discharge is, we think, clearly negatived by the terms of the rules above quoted.”
 

 The Supreme Court of California made a similar ruling in Adams v. Southern Pacific Co., 204 Cal. 63, 266 P. 541, 57 A. L. R. (Annotated) 1066.
 

 The rule is stated thus in 39 C. J. 73, § 62:-
 

 “Where a contract of employment provides that any dispute arising in connection with the agreement should be referred to arbitration in accordance with the provisions of the by-laws of an association, an award adverse to the employee on a reference of the question of misconduct involves the question of the right to dismiss, as a dispute arising in connection with the agreement for service, and is binding upon the employee.”
 

 The same principle is applied to other contracts — other than contracts of employment —and particularly to building contracts containing the stipulation that the work shall be performed to the satisfaction of the architect or engineer. O’Donnell v. Henry, 44 La. Ann. 845, 11 So. 245 ; Shea v. Sewerage & Water Board, 124 La. 333, 50 So. 166, 177 ; Fritz Jahncke, Inc., v. Fidelity & Deposit Co., 166 La. 593, 117 So. 729 ; Plumley v. United States, 226 U. S. 545, 33 S. Ct. 139, 57 L. Ed. 342 ; 9 C. J. 774, § 115; 6 R. C. L. 957.
 

 The judgment appealed from is annulled, and the plaintiff’s demand is rejected and his suit dismissed, at his cost.