## McCOMBS v. TEXAS & N. O. R. CO.

### No. 5602.

Court of Civil Appeals of Texas. Amarillo.

March 6, 1944.

Motion for Rehearing Overruled

May 1, 1944.

C. E. Smith, of Woodville, and R. F. Roberts, of Beaumont, for appellant.

Baker, Botts, Andrews & Wharton, of Houston, and Lamar Cecil, of Beaumont, for appellee.

HEARE, Justice.

This is a suit brought by appellant, J. R. McCombs, against appellee, Texas and New Orleans Railroad Company, for $2566.71, alleged to be due appellant as compensation for 2166 hours of overtime which appellant alleged he worked in the service of appellee and for which he had not been paid.

Appellant alleged that he was employed by, and worked for, appellee as agent and telegraph operator at appellee's station in Woodville, Tyler County, Texas, from May 1921 to May 6, 1940; that during the time of his employment there was in effect a general contract, known as the "Telegraphers' Agreement" between the Order of Railroad Telegraphers and the appellee, relating to this type of employment. Appellant alleged that he was, at all times material to the suit, a member of the Order of Railroad Telegraphers and worked under, and subject to, the terms of this general labor contract. Appellant alleged that during the time of his employment he worked all regular hours of eight hours per day and some overtime hours for which he had been paid, but that in addition to the time for which he had received payment he had also worked additional overtime to the extent of 2166 hours for which he was entitled to payment at the rate of $1.185 per hour.

Appellee interposed a plea in abatement, alleging in substance that under the terms of the general contract referred to by appellant, it was the duty of appellant, in the event he was aggrieved at appellee relative to his working condition or rate of pay, to pursue the method stipulated in the agreement for adjustment of his grievances; that he had wholly failed to pursue such method of adjustment of his grievances and that until he had done so he had no right to institute proceedings in a court of law.

Appellant specially pleaded that this is not a grievance case and not a suit for wrongful discharge, but is an action for wages under an employment contract.

A hearing was had on the plea in abatement, evidence was presented, whereupon the trial court sustained the plea in abatement and ordered the case abated and dismissed. The appeal, perfected to the Court of Civil Appeals for the Ninth Supreme Judicial District, has been transferred to this Court by the Supreme Court for determination.

The record reveals that appellant was employed by appellee in 1916, commenced working as agent for appellee in Woodville in 1921, and was relieved from service in 1940. By stipulation of counsel, only a part of the general agreement referred to is brought up in the record. The term "employee" is defined, the scope of the agreement is set out, the hours of service are designated, that is, regular time and overtime, and particular provisions in connection therewith as they apply to telegraphers are set forth. The part of the contract which is material to the disposition of this case, and on which appellee relies in support of the judgment sustaining the plea in abatement, is as follows:

"Article XI.

"Section 1. An employee disciplined, or who considers himself unjustly treated, shall have a fair and impartial hearing, provided, written request is presented to his immediate superior within five (5) days of the date of the advice of discipline and the hearing shall be granted within five (5) days thereafter.

"Section 2. A decision will be rendered within seven (7) days after completion of hearing. If an appeal is taken, it must be filed with the next higher official and a copy furnished the official whose decision is appealed, within five (5) days after date of decision. The hearing and decision on appeal shall be governed by the time limits of the preceding section.

"Section 3. At the hearing, or on the appeal, the employee may be assisted by a committee of employees, or by one or more duly accredited representatives.

"Section 4. The right of appeal by employees or representatives in regular order of succession and in the manner prescribed up to and inclusive of the highest official designated by the Company to whom appeals may be made, is hereby established.

"Section 5. An employee on request will be given a letter stating the cause of discipline. A transcript of the evidence taken at the investigation or on the appeal will be furnished on request to the employee or representative.

"Section 6. If the final decision decrees that charge against employee was not sustained, the record shall be cleared of the charge; if suspended or dismissed, employee will be returned to former position and compensated for the wage loss, if any is suffered.

"Section 7. Employees dissatisfied with the results of the investigation, as covered by this article, have the right, without prejudice, to appeal successively to the highest officer of the Company, vested with authority for handling such matter either in person or through the Order of Railroad Telegraphers."

Appellant contends that he was not obliged to seek relief under the method set up in the Labor Contract as a prerequisite to a suit in court for overtime pay for actual work performed as agent for appellee. We are of the opinion that this contention must be sustained.

It will be noted that appellant does not seek damages for wrongful discharge; that he does not seek reinstatement to his former position and compensation for wage loss as a result of suspension or discharge; that he does not seek restoration of any seniority rights; that he does not seek pay for time which he was not permitted to work; that he does not seek redress for any grievance concerning working conditions or alleged unjust discipline. He merely seeks payment for overtime which he alleges he has worked and for which he has not been paid.

With these observations in mind, we have reached the conclusion that the authorities cited by appellee do not sustain its position in this case on this point. At first blush, it would seem that the judgment of the trial court is squarely supported by the decision of the Court of Civil Appeals for the Sixth Supreme Judicial District of Texas in the case of Wyatt v. Kansas City Southern R. Co., 101 S. W.2d 1082. The opinion of that court is based not only on the construction of the private contract but also on the provisions of the Railway Labor Act, hereafter discussed. A study of that case reveals that the employee Wyatt was seeking recovery not only for overtime wages but also was claiming that he was wrongfully laid off for a number of days and was seeking compensation for those days

he was not permitted to work. Assuming that the decision there reached by the appellate court is sound, yet the case is distinguishable from the instant case because of the added feature embodying the grievance of a wrongful layoff of the employee.

In the case of Swilley v. Galveston, H. & S. A. R. Co., Tex.Civ.App., 96 S.W.2d 105, cited by appellee, the employee contended that he was unjustly discharged by his employer and that on appeal to the highest designated officer of the company, he was denied reinstatement. He sought damages for wrongful discharge, alleging that he was discharged from the service of his employer without just and sufficient cause. It was shown that the employee declined to prosecute his appeal from the highest designated company official to the supplemental board of adjustment provided for in the contract. The court held that by his failure further to prosecute his grievance before the special tribunals provided for in the contract and exhaust his remedies provided for therein, he was bound by the adverse finding of the last official passing on the question of wrongfulness of discharge and could not maintain an action at law by reason of such discharge *on the ground that it was unjustified.* In the Swilley case, supra, the court cites the case of Cousins v. Pullman Co., Tex.Civ.App., 72 S.W.2d 356. Appellee cites the same case. It will be noted that the issue in the Cousins case, supra, was *whether or not the employee was properly or improperly discharged.* That is recognized by the language of the court in the Swilley case, supra [96 S.W.2d 108], where it is stated:

"In the Cousins Case, supra, *which is directly in point on the questions involved in this appeal,* it is said by the court: 'The doctrine is well settled that where the contract of employment provides, as in the instant case, that a discharged employee may appeal to designated tribunals, he is bound to pursue the contract remedy and cannot properly complain to a court for redress, unless and until he exhausts that remedy, and shows an effective appeal, *entitling him to reinstatement and compensation for wages lost.'"* (All emphasis is ours.)

Likewise, in St. Louis, B. & M. R. Co. v. Booker, Tex.Civ.App., 5 S.W.2d 856, cited by appellee, the holding of the court was to the effect that after the remedial procedure provided for in the contract was followed and the justness of the employee's discharge was thus determined, then the employee was not entitled to have a jury pass on the question of justness of discharge.

The case of San Antonio & A. P. R. Co. v. Collins, Tex.Com.App., 61 S.W.2d 84, involves the question of pay for time lost by reason of wrongful discharge. The cases of Harrison v. Pullman Co., 8 Cir., 68 F.2d 826, Robertson v. Panhandle & S. F. R. Co., Tex.Civ.App., 77 S.W.2d 1078, and Caulfield v. Yazoo & M. V. R. Co., 170 La. 155, 127 So. 585, all involve the question of damages sought by the employee for wrongful discharge by his employer. In each of the cases the issue of the wrongfulness of his discharge was the foundation of the employee's suit. We therefore say that the case at bar is clearly distinguishable from the authorities cited by appellee.

But even if it be admitted that no such distinction exists, yet, in our opinion, the Supreme Court of the United States, in the case of Moore v. Illinois Central Railroad Company, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, has ruled favorably to appellant's contention on the issue under consideration. That case arose out of a claim predicated on wrongful discharge. It was contended by the railroad company that the employee's suit was premature because he had not exhausted his administrative remedies. The Wyatt, Swilley, Cousins, Booker, Harrison, and Caulfield cases, supra, were all presented to the United States Supreme Court as authority for the proposition that petitioner's suit was premature. See 312 U.S. 630, 61 S. Ct. 754, 756, 85 L.Ed. 1090. Mr. Justice Black, in delivering the opinion of the Court, stated:

"But respondent says that there is another reason why the judgment in its favor should be sustained. This reason, according to respondent, is that both the District Court and the Circuit Court of Appeals erred in failing to hold that Moore's suit was prematurely brought because of his failure to exhaust the administrative remedies granted him by the Railway Labor Act (May 20, 1926) 44 Stat. 577 [chap. 347], as amended (June 21, 1934) 48 Stat. 1185 [chap. 691], * * * 45 U.S.C.A. § 151 et seq. But we find nothing in that Act which purports to take away from the courts the jurisdiction to determine a controversy over a wrongful discharge or to make an administrative finding a pre-

requisite to filing a suit in court. In support of its contention, the railroad points especially to section 153(i), which, as amended in 1934, provides that disputes growing out of grievances or out of the interpretation or application of agreements 'shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes.' And in connection with this statutory language the railroad also directs our attention to a provision in the agreement between the Trainmen and the railroad—a provision authorizing Moore to submit his complaint to officials of the railroad, offer witnesses before them, appeal to higher officers of the company in case the decision should be unsatisfactory, and obtain reinstatement and pay for time lost if officials of the railroad should find that his suspension or dismissal was unjust. It is to be noted that the section pointed out, § 153(i), as amended in 1934, provides no more than that disputes 'may be referred * * * to the * * * Adjustment Board * * *.' It is significant that the comparable section of the 1926 Railway Labor Act (44 Stat. 577, 578 [chap. 347]) had, before the 1934 amendment, provided that upon failure of the parties to reach an adjustment a 'dispute shall be referred to the designated Adjustment Board by the parties, or by either party * * *.' This difference in language, substituting 'may' for 'shall', was not, we think, an indication of a change in policy, but was instead a clarification of the law's original purpose. For neither the original 1926 Act, nor the Act as amended in 1934, indicates that the machinery provided for settling disputes was based on a philosophy of legal compulsion. On the contrary, the legislative history of the Railway Labor Act shows a consistent purpose on the part of Congress to establish and maintain a system for peaceful adjustment and mediation voluntary in its nature. The District Court and the Circuit Court of Appeals properly decided that petitioner was not required by the Railway Labor Act to seek adjustment of his controversy with the railroad as a prerequisite to suit for wrongful discharge."

The case went up from the Fifth Circuit. That the private collective agreement, as well as the Railway Labor Act, as amended, 45 U.S.C.A. § 151 et seq., was considered by the court is reflected not only by the language of the Supreme Court, but also by the opinion of the Circuit Court, Illinois Cent. R. Co. v. Moore, 5 Cir., 112 F.2d 959, 965, in the following language:

"The provision in the collective agreement for a hearing before the carrier's officers, with appeal to the highest, is in line with the requirements of the statute, but neither it nor the statute intends to make the employer's adverse decision binding on the employee. The requirement that relief be sought up through the highest operating officer seems to be a prerequisite to an appeal to the Adjustment Board, but not to a suit in court."

See, also, Adams v. New York, C. & St. L. R. Co., 7 Cir., 121 F.2d 808.

If that be the rule in a case where wrongful discharge is alleged and damages or lost pay sought by reason thereof, then we can find no reason for a more stringent rule establishing a condition precedent to suit in the instant case where the action is only for pay alleged to be due for time actually worked, particularly where the contract in question does not expressly establish such procedure as a condition precedent to suit. As pointed out at the beginning, appellant is not seeking reinstatement in employment; he is not seeking pay for time he did not work; he is not seeking restoration of seniority rights; he is not seeking damages for wrongful discharge; he is seeking only one thing—pay for the overtime which he alleges he has served his employer and for which he has not been paid. We find nothing in the parts of the general contract before us that requires the employee to seek administrative remedial relief as a condition precedent to his suit in court for wages. Absent such prerequisite, the employee has the right in the first instance to lodge and prosecute in court his claim for alleged earned wages.

The right of any citizen to seek establishment and enforcement of his legal rights in a court of competent jurisdiction is both valuable and fundamental. Any private arrangement tending to abolish, limit, or even delay such a right will be carefully scrutinized, and unless there exists a definite agreement setting up a con-

dition precedent to his suit, the citizen will not be denied an early day in court.

The trial court undoubtedly concluded that the Wyatt case, supra, was controlling, and under its authority sustained the plea in abatement. We are of the opinion that in so doing, the trial court fell into error.

The second point raised by appellant is to the effect that inasmuch as appellant had already been discharged from his employer's service he could not have sought administrative relief as permitted by the contract and therefore was relieved of the necessity of so doing. In other words, if he was required to seek administrative relief he should have been given the opportunity of an appeal to the company officials before being discharged. We are not impressed with this contention. While it does not affect our determination of the case, we dispose of appellant's second point by overruling it.

It being our opinion that the trial court erred in sustaining appellee's plea in abatement, the case will be reversed and the cause remanded for trial on its merits.

Reversed and remanded.