**W. H. TINNON, Plaintiff,**

v.

**MISSOURI PACIFIC RAILROAD COMPANY, Defendant.**

**Civ. A. No. 414.**

United States District Court
W. D. Arkansas,
Harrison Division.

Nov. 21, 1958.

Thomas B. Tinnon, Mountain Home, Ark., Charles R. Garner, Ft. Smith, Ark., for plaintiff.

Herschel H. Friday, Jr., Little Rock, Ark., for defendant.

JOHN E. MILLER, District Judge.

The plaintiff, W. H. Tinnon, is a citizen of Arkansas and resides in the town of Cotter in Marion County, Arkansas. The defendant is a corporation organized and existing under the laws of the State of Missouri, and is engaged in the operation of railroads in the State of Arkansas.

On May 29, 1957, the plaintiff filed his complaint in which he alleged that on or about October 1, 1910, while a citizen and resident of the State of Missouri, he entered into a contract of employment with the defendant as a railroad locomotive fireman in which it was agreed, among other things, that plaintiff would continue in the employment of defendant under the terms and conditions of the written contract and agreement between the defendant and the Brotherhood of Locomotive Firemen and Engineers, a duly constituted labor organization, which written agreement was for the benefit of the plaintiff and others similarly situated; that the plaintiff at all times material herein is and has been a member in good standing of the Brotherhood of Locomotive Firemen and Engineers and/or Brotherhood of Locomotive Engineers; that contracts or agreements made or existing at all times material herein between the defendant and either of the said brotherhoods were made and are kept in force for the benefit of the plaintiff and other members of the brotherhoods.

That on about August 22, 1930, the Brotherhood of Locomotive Engineers entered into a written contract and agreement with the defendant for the benefit of the plaintiff and other employees of the defendant by the terms and conditions of which it was provided in Article 44 thereof, "no engineer shall be discharged, suspended or have notation placed against his record without just or sufficient

cause." That this contract was in full force and effect on November 7, 1955.

That the plaintiff entered upon the performance of his contract and duly performed all of the conditions of the contract, agreement of scheduled wages at any and all times in force and effect until he was discharged without just cause by the defendant. The plaintiff further alleged:

"On or about the 18th day of November, 1955, while plaintiff was engaged in duly carrying out his contract of employment, the defendant, without any fault on the part of the plaintiff, and specifically without just or sufficient cause, did discharge plaintiff from its employment and refused to permit him to carry out his agreement."

That immediately prior to his discharge the plaintiff was employed as a locomotive engineer and was earning, under the terms and conditions of his contract of employment, $8,500 annually; that by reason of the wrongful discharge plaintiff has been damaged in the sum of $12,625 that he would have and could have earned between the 18th day of November, 1955, and the 18th day of May, 1957, as wages; that plaintiff was damaged in the further sum of $96,000 that he would and could have earned between May 18, 1957, and May 18, 1969, his reasonable life expectancy.

The prayer is that plaintiff recover $108,000, with interest and costs.

In due time the defendant filed its answer in which the defendant admitted that the plaintiff was originally employed by defendant as a locomotive fireman in 1910, but denied that under the contract of employment plaintiff was to continue in the employment of the defendant under the terms and conditions of the contract or agreement between defendant and the Brotherhood of Locomotive Firemen and Engineers.

The defendant also denied that the contract or contracts between it and the labor organizations was made for the benefit of the plaintiff.

Admitted that an agreement was entered into effective September 1, 1930, between the Brotherhood of Locomotive Engineers and the defendant and that Article 44 of said agreement is as follows:

"Article 44—Discipline, Appeal and Representation.

"a. No engineer shall be discharged, suspended or have notation placed against his record without just or sufficient cause. When an engineer is charged with an offense which would warrant his suspension or discharge, if sustained, no suspension or discharge shall be inflicted (except suspension pending investigation) without a thorough investigation within five (5) days before the official having jurisdiction, at which he may have an engineer of his choice assist him in the investigation, who will be permitted to examine witnesses. He or his representative shall be furnished with a copy of the evidence brought out at such investigation, which will be the basis for discipline administered. When an engineer is called for investigation he shall be notified in advance for what purpose he is called.

"b. If the engineer is not satisfied with the result of the investigation, he shall have the right to appeal his case through the General Chairman to the General Superintendent and then, if necessary, to the General Manager. In case discharge or suspension is subsequently found to be unjust, he shall be reinstated and, if a regular engineer, be paid for all time he would have made on his engine or run, during the period of suspension, or discharge; if an extra man, he will be paid for time lost at rate of service last engaged in. If the notation against his record is decided to be unjust, it will be eliminated. When a notation is entered against an engineer's record, he will be furnished a copy and will receipt for it.

"c. Any complaint or evidence against an engineer which may affect his rights or employment shall be in writing.

"d. When an engineer requests additional time for the investigation, it will be granted and no compensation for such time will be allowed. When the Company requires additional time, the engineer will be allowed compensation for such time, whether found guilty or not."

That the agreement above referred to was in effect on the 7th day of November, 1955, and was in effect at the time of the trial. Denied that the plaintiff was discharged from his employment without just cause and admitted that on or about November 16 the plaintiff was dismissed from the service of the defendant, and alleged that said dismissal was just and for sufficient cause and based upon admitted violations of the operating rules then in effect. The prayer of the answer was that the plaintiff recover nothing and that the complaint of plaintiff be dismissed.

After some two or three pre-trial conferences the cause proceeded to trial to a jury. The trial of the case to a jury began on September 10, 1958, and was concluded the next day, September 11.

At the conclusion of the plaintiff's testimony, the defendant filed a motion to dismiss and as grounds therefor stated:

"A. Under the undisputed facts the plaintiff's contract of employment was made in Arkansas and/or was to be performed in Arkansas, and therefore, the substantive law of Arkansas applies.

"B. Under the substantive law of Arkansas the plaintiff's cause of action cannot be maintained and must be dismissed."

At the conclusion of all of the testimony, the defendant moved for a directed verdict on the following grounds:

"A. Under the undisputed facts there being no substantial evidence to the contrary, the plaintiff was given a thorough and a fair investigation after proper notice, and based upon the admitted rule violations at the investigation, the defendant had the legal right to discharge the plaintiff.

"B. There is no substantial evidence that the defendant acted arbitrarily so under the undisputed facts, the action of the defendant in discharging the plaintiff was a prerogative of management concerning which a jury is not entitled to substitute its judgment for that of the defendant.

"C. Under the facts in this case the jury is not entitled to determine whether there was a legal justification to discharge.

"D. Under the undisputed facts, the plaintiff violated certain rules, and there being no substantial evidence that the defendant acted arbitrarily a jury cannot be allowed to substitute its judgment for that of the defendant as to the nature or extent of the discipline administered.

"E. The essential facts are not in dispute, so the Court should interpret the contract and instruct the jury as a matter of law that there were rule violations and the defendant had a legal right to administer the discipline assessed against the plaintiff.

"F. Under the undisputed facts the plaintiff's contract of employment was made in Arkansas and/or was to be performed in Arkansas, and therefore, the substantive law of Arkansas applies, and under the substantive law of Arkansas the plaintiff's cause of action cannot be maintained and must be dismissed."

Action on the motion to dismiss was reserved by the court and the motion for directed verdict in favor of defendant was denied. The case was argued and submitted to the jury which considered the case until the afternoon of September 12, when the jury reported that it was unable

to reach a verdict, and an order of mistrial was entered.

On September 20, 1958, the defendant, pursuant to the provisions of Rule 50, F.R.Civ.Proc., 28 U.S.C.A., moved the court to enter judgment for it in accordance with its motion for a directed verdict filed at the close of all of the evidence. This motion substantially reiterates the grounds as alleged in the motion for a directed verdict.

On October 2, 1958, prior to the consideration by the court of the motion of defendant for judgment in accordance with its motion for a directed verdict, the plaintiff filed his motion for leave to dismiss without prejudice, which motion was on October 18, 1958, denied, and the questions now before the court are presented by the motion of defendant for judgment in accordance with its motion for a directed verdict.

There is no substantial dispute of any material fact.

The plaintiff on November 26, 1910, while a resident of Crane, Missouri, applied for employment by defendant as a fireman. His application was approved and he entered upon his employment in such capacity. Shortly after plaintiff entered the employment of defendant, he moved to the town of Cotter in Marion County, Arkansas, in 1912 or 1913, and has lived in Cotter since that time. In due time he became a locomotive engineer and his home station continued to be Cotter, Arkansas. During the time he was employed as an engineer, the collective bargaining agreement heretofore referred to was entered into between defendant and the Brotherhood of Locomotive Engineers. Plaintiff continued without interruption as an employee until sometime in 1949 when he was suspended, but was reinstated without loss of time. After his suspension in 1949, it was not necessary to enter into a new contract of employment since he was merely reinstated at the conclusion of the investigation of the incident which led to his suspension.

On the morning of November 7, 1955, plaintiff was the engineer on Red Ball Freight Train No. 260 which was scheduled to leave Cotter, Arkansas, at 7:45 a. m. on its northward run. On the same date Passenger Train No. 221 was making its scheduled run southward. Freight Train No. 260 proceeding north was an inferior train to Passenger Train No. 221 proceeding south.

When the passenger train No. 221 arrived at Cricket, Arkansas, it received order No. 25 which required train No. 221 to wait at Bergman, Arkansas, until 9:05 a. m. and at Zinc, Arkansas, until 9:20 a. m. for freight train No. 260. The said order was received by plaintiff while his train, No. 260, was at Flippin, which is the first station north of Cotter, Arkansas. The freight train consisted of a diesel locomotive and fifty-five cars.

Under this order, if train No. 260 proceeded to Bergman to meet train No. 221 there, the former was required to have the entire train clear of the main track at Bergman at 9 a. m. or afford flag protection ahead against train No. 221, since the latter was a first class train and superior to train No. 260. Train 221 arrived at Bergman prior to 9 a. m. and stopped some distance short of the fouling point of Bergman siding.

The trains were operating under the Uniform Code of Operating Rules which became effective May 1, 1950, and were effective on November 7, 1955.

Rule S. 89 is at follows:

"Clearing Time, Opposing Trains —An inferior train must clear the time (in time table or train order) of an opposing superior train in less than five minutes before the leaving time of the superior train."

Rule 87 reads as follows:

"Protection When Failure To Clear—When an inferior train fails to clear a superior train by the time required by rule, it must be protected at that time as prescribed by Rule 99.

"Trains must pull into siding when practicable; if necessary to back in, or back out, the train must

first be protected as prescribed by Rule 99 unless otherwise provided."

Rule 99 is designated "Flagging Rule", and 99(b) reads as follows:

"When necessary, the front of the train must be protected as prescribed by Rule 99 by the forward trainman or by an engine man.

"The engineer will require such protection ahead immediately."

Rule D provides:

"Employees must report to the proper officer any violation of the rules or instructions, any condition or practices which may imperil the safety of trains, passengers, or employees, and any misconduct or negligence affecting the interests of the railroad."

Rule 107(1) provides:

"(1) Both the conductor and the engineer are responsible for the safety of the train and the observance of the rules, and, under conditions not provided for by the rules must take every precaution for protection.

"(3) Engineers are jointly responsible with the conductor for the safety of the train, and proper observance of the rules, and although they are under the direction of the conductor regarding the supervision of trains, they will not comply with any instructions which imperil the safety of the train or involve a violation of the rules."

Ordinarily an inferior train, in meeting a superior train at Bergman, would use the passing track. When the plaintiff decided that he would be unable to clear the track for the superior train, he inquired of one of the other train employees whether there were any cars on the team track, and, when advised that there were not, he decided to enter the south end of the team track rather than to proceed further north to the entrance to the passing track, but notwithstanding the decision to enter the team track the plaintiff was unable to clear the track for the superior train until 9:03½. The plaintiff did not provide a flagman between the entrance to the team track and the superior train sitting to the north on the main track.

Mr. J. G. Sheppard, Assistant Superintendent of the Joplin and White River Divisions, was aboard the passenger train No. 221 and observed the failure of the inferior train No. 260 to clear the superior train five minutes before the leaving time of the superior train. The plaintiff did not report to the proper officer a violation of the rules or orders, but an investigation was instituted because of the information that the Assistant Superintendent obtained by reason of his presence on the passenger train. The formal investigation was held at Crane, Missouri, on Friday, November 11, 1955, "to develop the facts and place responsibility for alleged failure of Train No. 260 to properly clear time of Train No. 221 at Bergman, Arkansas on November 7, 1955 and alleged failure to afford proper flag protection when time not cleared, also alleged failure of all to make proper reports on this incident." (See Defendant's Exhibit No. 1.)

The entire train crew of both trains were present and testified at the investigation. The plaintiff was represented by R. H. Freeman and R. M. Sutherland. At that hearing the plaintiff testified:

"Q. You have stated you were heading in at the South Team Track Switch at Bergman at 9:00 a. m. and you had to pull some 54 or 55 cars in the clear so it was sometime after 9:00 a. m. before your train cleared the main track at Bergman, is that right? A. Yes.

"Q. Just what was the approximate time that you did clear? A. I figure about 9:03 or 9:04 not later than 9:04 a. m.

"Q. If you had gone on down the main track to designated switch south end Bergman siding what time could you have cleared main track then? A. Well, it would be a guess, but believe I could have cleared about same time or probably a little bit earlier.

"Q. At 9:00 a. m. you were heading in south end team track at Bergman, did you have flag protection ahead for a safe flagging distance at that time? A. No the flag was on the engine, we thought we could go thru the pass faster than he would walk, he was standing there ready to flag.

"Q. Did you at anytime before you reached Bergman talk to anyone on Train 221 by radio? A. No sir.

"Q. What time should your train No. 260 have been in the clear at Bergman for Train 221? A. At 9:00 a. m. to fully comply with the rules.

"Q. Was the radio on your engine working that date? A. Yes.

"Q. Did you make any report to anyone, officers, about this failure of your train to clear time of No. 221? A. No sir I didn't make any report.

"Q. In this case by not having flag protection out at 9:00 a. m. did you comply with the requirements of rule 87? A. No, the flag wasn't out.

"Q. Are you familiar and do you understand the requirements of S–89 of Uniform Code of Operating Rules—Rule read. 'S 89—Clearing Time, Opposing Trains.—An inferior train must clear the time (in timetable or train order) of an opposing superior train not less than 5 minutes before the leaving time of the superior train.' A. Yes.

"Q. In this case did your train, No. 260, clear No. 221 as required by Rule S 89? A. We was on their time before we got the entire train in clear, under the 5″ clearing time rule.

"Q. Then you did not comply with the requirements of this rule? A. Strictly, no, but we had flag on the engine up to 221.

"Q. Mr. Tinnon, are you familiar with the requirements and understand Rule 99–B of the Uniform Code of Operating Rules? '99(b)

When necessary, the front of the train must be protected as prescribed by Rule 99 by the forward trainman or by an engine man. The engineer will require such protection ahead immediately.' A. Yes sir.

"Q. In this case did you comply with the requirements of Rule 99–b? A. I figure we did, was taking the flag faster than he could have walked up to point where passenger was standing.

"Q. Is it a fact that you were not in the clear at 9:00 a. m. and did not provide flag protection ahead prior to 9:00 a. m.? A. Yes that is a fact.

"Q. Did you comply with the requirements of Rule 99–b which required you, the engineer, to require such flag protection ahead? A. No.

"Q. In this case did you comply with this rule 107, paragraphs 1 and 2? A. No we did not fully comply with with the rule, didn't have a thorough discussion of just what we would do when we got there.

"Q. Was there any doubt in your mind as to whether you were going to get your train in the clear by 9 o'clock? A. I knew we wasn't going to get it in the clear by 9:00 o'clock."

The statements made by plaintiff at the investigation were substantially the same as testified to by him at the trial.

As a matter of fact, all witnesses agreed that train No. 260 did not clear the time of the superior train No. 221, although no one suffered any damage by reason of the failure of plaintiff and the crew of 260 failing to clear the time as provided by the rules.

The plaintiff was notified on November 16, 1955, of the result of the investigation as follows:

"Dear Sir:
"You are hereby advised that your record has this date been assessed with dismissal. Account, failure of train No. 260 to properly clear the time of train No. 221 at Bergman, Arkansas, November 7, 1955, violation of Uniform Code of Operating

Rules D, S–89, 87, 215, 107, Para. 1 and 2, 99(b) and 108. Your record now stands, dismissed from service."

As heretofore stated, the jury was unable to reach a verdict.[1]

The plaintiff states that, although he was living at Cotter, Arkansas, at the time he became an engineer, his employment as such was a mere continuation or promotion under his contract of employment as a locomotive fireman, and in carrying out the duties of his employment he was engaged in transportation between Cotter, Arkansas, and Crane, Missouri, on November 7, 1955, the date of the alleged violation of the rules.

 The first question is, the substantive law of which state shall be applied in determining the rights of the plaintiff under the contract between defendant and the Brotherhood of Locomotive Engineers. Plaintiff contends that the substantive law of Missouri applies and that under the agreement or contract between the defendant and the Brotherhood of Locomotive Engineers he may recover if his discharge was wrongful.

On the other hand, the defendant contends that the substantive law of Arkansas applies and that under the Arkansas law the plaintiff has no cause of action.

The conclusion that the court has reached makes it unnecessary to determine whether the substantive law of Missouri or the substantive law of Arkansas should be applied.

The case of Smithey v. St. Louis Southwestern Railway Company, 8 Cir., 1956, 237 F.2d 637, 638, was a diversity suit to recover damages under Arkansas law for

---

1. Inter alia, the court instructed the jury as follows:

"No. 4

"You are instructed that an employer is entitled to discharge an employee under contract for just and sufficient cause, and that if discharged for such cause, an employee is not entitled to recover damages. An employer is entitled to make all reasonable rules as it may deem proper in the light of its experience for the reasonably safe and uniform operation of its business, and its employees owe the employer the duty of obeying all such rules and orders. Intentional or negligent violation of any rule or order by an employee is just and sufficient cause for discharge by the employer, and an employee cannot substitute his judgment for that of his employer and negligently or knowingly violate a rule, even though the violation may do no damage to the employer in the particular instance, and even though the employer is of the opinion or belief that the observance of the rule was unnecessary under the circumstances.

"No. 5

"You are instructed that the admitted acts of the plaintiff constituted a violation of the defendant's rules, or rule. However, if you find from a preponderance of the evidence that the plaintiff, although violating the defendant's rules, was nevertheless making a good faith effort to comply with such rules, and that violation of them was not the result of negligence and was unintentional, and if you further find from a preponderance of the evidence that the violation was of such a minor and unimportant nature as to be inconsequential, then you may consider whether, under all the circumstances, the defendant had just and sufficient cause for discharging the plaintiff.

"In this connection, however, you may not consider what action you might personally have taken in the defendant employer's place, and you may not substitute your judgment or personal feeling for that of the defendant; rather, you must consider whether the defendant acted in good faith and as a reasonable and prudent employer would act in the management of a railroad, giving due consideration to the safety of passengers, property and employees, and giving due consideration to its right to operate its business as it saw fit, along with all the facts and circumstances shown by the evidence in determining whether the defendant had just and sufficient cause for discharging the plaintiff.

"No. 6

"If you find from a preponderance of the evidence that the defendant did not in fact have just and sufficient cause for discharging the plaintiff under the law as given you by the court, then you will find the issues in favor of the plaintiff.

"If you find that the defendant did in fact have just and sufficient cause for such discharge, or, if the plaintiff fails to prove by a preponderance of the evidence that no just and sufficient cause existed for the discharge, then you will find the issues in favor of the defendant and against the plaintiff."

wrongful discharge. The trial court dismissed the action without a trial on the basis that the employment relation between plaintiff and the defendant was concededly one that was terminable at will on the part of the plaintiff, and that under Arkansas law it therefore also constituted one that was terminable at the will of the defendant; and that in that situation the Arkansas decisions recognized no right in an employee to recover damages for a discharge. The plaintiff was employed as a telegrapher in the offices of defendant at Pine Bluff, Arkansas, when she was discharged for allegedly failing to cover a relay assignment, which she had been instructed to protect.

There was in effect at the time a labor agreement between the defendant and the Order of Railroad Telegraphers, which was the collective bargaining agent for the telegraphers on the system, that obligated the railroad, on request, within a certain time to accord any telegrapher employee who might be disciplined "a fair and impartial hearing" before a named official of the railroad with the privilege of appeal successively to other designated higher officials, and with a right to reinstatement and back pay if the final decision decrees the charges against the employee were not sustained.

The plaintiff contended that the Railway Labor Act, 45 U.S.C.A. § 153, gave rise to a federal administrative right and remedy in favor of an employee for a discharge made in violation of the terms of the labor agreement, because of the status accorded by the Act to such an agreement for federal purposes in the transportation field.

The court held:

"But the Act did not make this status the subject of a federal right to recover damages for discharges violative of the agreement. The right of a railroad employee to damages for a discharge, whether related to a labor agreement or otherwise, is a matter that has been left entirely to state contractual concept and remedy. Damages for discharges violative of a collective bargaining agreement under the Act can be recovered only 'if the state courts recognize such a claim.' Transcontinental & Western Air, Inc., v. Koppal, 345 U.S. 653, 661, 73 S.Ct. 906, 910, 97 L.Ed. 1325. In other words, a railroad employee cannot claim damages for any discharge, except as the discharge constitutes an actionable one under the law of the applicable state.

"Arkansas law appears to treat a labor agreement, in its provisions as to discharge, as impliedly becoming a part of each individual contract of hire. But no right to recover damages for alleged wrongful discharge is recognized in favor of any employee whose personal contract, in its whole, leaves him free to terminate the employment relation at his will. The Supreme Court of Arkansas has held that any qualifications or limitations attempted to be imposed upon the employer's right to discharge in such a situation are without legal actionability for breach, because of a lack of mutuality in respect to this phase of the employment relationship.

"The Court so held in the early case of St. Louis, I. M. & S. Ry. Co. v. Matthews, 1897, 64 Ark. 398, 42 S.W. 902, 39 L.R.A. 467, and it reconsidered and adhered to that view, 46 years later, in Petty v. Missouri & Arkansas Ry. Co., 1943, 205 Ark. 990, 167 S.W.2d 895, certiorari denied 320 U.S. 738, 64 S.Ct. 37, 88 L.Ed. 437, rehearing denied 320 U.S. 812, 64 S.Ct. 188, 88 L.Ed. 491. There are no later Arkansas decisions departing from the holding of these cases, both of which, the same as the present situation, involved attempts by railroad employees to recover damages for breach of qualifications or limitations on the railroad's right to discharge, having their source in a collective bargaining agreement and so becoming a part of an employee's individual contract of hire."

Thus, if the Arkansas substantive law is applied, the plaintiff cannot maintain the suit.

But the plaintiff contends that, if the substantive law of Missouri is applied, he does have the right to maintain such a suit, but under the undisputed evidence the plaintiff violated certain operating rules as heretofore set forth.

The Supreme Court of Missouri in Craig v. Thompson, 1951, 244 S.W.2d 37, at page 41, said:

"Under an agreement or contract between a railway labor union and an employer, an employee coming under that contract may recover if his discharge was wrongful, even though engaged only for an indefinite period. Hall v. St. Louis-San Francisco R. Co., 224 Mo.App. 431, 28 S.W.2d 687. A cause of action for a wrongful discharge from employment of necessity must be founded upon a contract of employment. Clark v. Cincinnati, N. O. & T. P. Ry. Co., 258 Ky. 197, 79 S.W.2d 704; 56 C.J.S. Master and Servant § 48, at page 441. No cause of action for wrongful discharge arises where the employer, in good faith and in conformity with the provisions of the employment contract, discharges the employee for the clear or confessed violations of the rules. Caulfield v. Yazoo & M. V. Railroad Co., 170 La. 155, 127 So. 585; St. Louis, B. & M. Ry. Co. v. Booker, Tex.Civ.App., 5 S.W.2d 856. See also, Adams v. Southern Pacific R. Co., 204 Cal. 63, 266 P. 541, 57 A.L.R. 1066 and 56 C.J.S. Master and Servant §§ 32, 48, at pages 416 and 442. An employer may discharge an employee when the latter fails to appear to perform his duty even though no injury results to the employer. Bank of America, Nat. Trust & Savings Ass'n, v. Republic Productions, 44 Cal.App.2d 651, 112 P.2d 972. It is widely held that absence from the place of his employment which prevents an employee from performing the work for which he is employed is sufficient justification for discharge. In every contract of employment it is implied that the employee will obey the lawful and reasonable rules, orders and instructions of the employer, and disobedience of such known rules justify the employee's discharge. McCain v. Desnoyers, 64 Mo.App. 66; Wood on Master & Servant, Sec. 119, Lindner v. Cape Brewery & Ice Co., 131 Mo.App. 680, 111 S.W. 600; 56 C.J.S. Master and Servant § 42, page 432; Caulfield v. Yazoo & M. V. Railroad Co., supra; St. Louis, B. & M. Ry. Co. v. Booker, supra; Robertson v. Panhandle & Santa Fe Ry. Co., Tex.Civ. App., 77 S.W.2d 1078, 1080; Farmer v. First Trust Co., 7 Cir., 246 F. 671, L.R.A.1918C, 1027; Swilley v. Galveston, H. & S. A. R. Co., Tex.Civ. App., 96 S.W.2d 105; Greene v. Hawaiian Dredging Co., Cal.App., 151 P.2d 560; Id., 26 Cal.2d 245, 157 P.2d 367; Stoffel v. Metcalfe Const. Co., 145 Neb. 450, 17 N.W.2d 3; Watkins, Inc., v. Cochran, 292 Ky. 846, 168 S.W.2d 351; 35 Am.Jur. Master and Servant, pp. 514, 478, 479. Whether a certain state of facts as to which there is no dispute amounts to a legal justification for discharge, i. e., whether the discharge was or was not wrongful, is a question of law for the court. But where the facts are in dispute as to whether the discharge was or was not wrongful, the question is always one for the jury under proper instructions. Carson v. McCormick Harvesting Machine Co., 36 Mo.App. 462, 468; Wood on Master and Servant, Sec. 119."

On page 43 of 244 S.W.2d, the court said:

"Under the instant circumstances, plaintiff is not entitled to have a jury pass upon the question of whether his confessed violation of the operating rules of his employer warranted his dismissal, for the jury may not here substitute its opinion for the conclusion of plaintiff's em-

ployer upon that question. Caulfield v. Yazoo & M. V. R. Co., supra; St. Louis, B. & M. Ry. Co. v. Booker, supra; Adams v. Southern Pacific Ry. Co., supra."

In Parks v. Thompson, 1952, 363 Mo. 791, 253 S.W.2d 796, the Supreme Court of Missouri, at page 802 of 253 S.W.2d, said:

"The instant case falls within the ruling in Craig v. Thompson, Mo., 244 S.W.2d 37, 43, and authorities there cited, to the effect that no claim for wrongful discharge arises where a railroad in good faith and in conformity with the employment contract discharges an employee for the clear and admitted violations of rules promulgated for the safety of the traveling public and others after a fair and impartial investigation."

It is clear that, under the substantive law of Missouri, plaintiff, who had violated the operational rules of his employer, is not entitled to have a jury pass upon the question of whether the violation warranted his dismissal, for the jury may not substitute its opinion for the conclusion of the employer upon that question.

The investigation or hearing as provided for in Article 44 of the agreement between the defendant and the Brotherhood of Locomotive Engineers was eminently fair. The decision reached was not arbitrary and, after such hearing, the plaintiff was discharged because of admitted violations of the rules. And the Supreme Court of Missouri has said he is not entitled to have a jury pass upon the question of whether the violation warranted his dismissal. Therefore, the substantive law of Missouri would require the court to instruct a verdict for the defendant.

Thus, under either the substantive law of Missouri or the substantive law of Arkansas, the plaintiff is not entitled to recover, and the motion of defendant for judgment in accordance with the motion for a directed verdict should be granted, and judgment in accordance with said motion is being entered today.