GLADNEY, Judge.
Plaintiffs have instituted this suit for damages and, alternatively, for specific performance of certain provisions of a collective bargaining agreement between the *498 Shreveport Transit Company, Inc. and the Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America. Their petition alleges that they are members in good standing of the Association, and that they were wrongfully discharged from their employment as bus operators for defendant company. A copy of the contract in question is made a part of their pleadings. In the trial court an exception of no cause or right of action was sustained. Plaintiffs have appealed.
The established facts for purposes of this appeal are that on June 29, 1960, plaintiffs were discharged because of discrepancies in the registration of fares. Plaintiffs assert they were not guilty of this charge and that the company denied them a hearing in contravention of certain provisions of the collective bargaining agreement. They further complain that the company disregarded the contract in other respects, which we consider inconsequential, in that it took such action on unfair reports of anonymous checkers, and refused to supply written reasons for their discharge. The trial judge, in sustaining the exceptions of no cause or right of action, said; “We have reached the' conclusion that the contract itself excepts from its provisions complaints based on irregularity in registering cash fares, etc.” Pertinent provisions of the contract are Art. I, Section 2, Art. II, Section 3, and Art. Ill, Section 5.[1]
Under those provisions any employee of the company who is a member of the Association and who feels he has been unfairly treated, may initiate his grievance by asking his superintendent for a review of his case except in case of discharge on account of irregularity in registration of cash fares, tickets or transfers. Appellee earnestly contends that by reason of this exclusionary clause an employee so discharged has no right to a hearing or review of his case. Otherwise, under the plain terms of the contract, the employee may have his case reviewed by his superintendent, and if still dissatisfied, he may appeal to the Association for further consideration, and after that he, together with proper officials of the Association may submit the matter to the president of the com *499 pany. Additionally, his case may be submitted to arbitration.
Appellants urge the judge of the lower court was in error in dismissing their suit on the exception, which ruling denies them any relief under the contract. The issue imposes upon this court the duty of properly construing the rig’hts of appellants under the provisions of the agreement.
Our law recognizes that all things that are not forbidden by law, may legally become the subj ect of, or the motive for contracts, but different agreements are governed by different rules. Obligations are to be interpreted according to the intent of the parties and courts must give legal effect to all such contracts according to the true intent of all the parties. Such intent shall be determined by the words of the contract, when these are clear and explicit. LSA-C.C. Arts. 1764, 1945. In Association of Westinghouse Salaried Employees v. Westinghouse Electric Company, 1954, 348 U.S. 437, 75 S.Ct. 489, 497, 99 L.Ed. 510, the Supreme Court of the United States was concerned with an issue of jurisdiction in an action brought by a union on behalf of its member employees for accrued wages allegedly due under a collective bargaining agreement between the union and the employer. In resolving the construction of certain language of an act of Congress the court quoted Mr. Justice Cardozo to this effect:
“We think the light is so strong as to flood whatever places in the statute might otherwise be dark. Courts have striven mightily at times to canalize construction along the path of safety * * * When a statute is reasonably susceptible of two interpretations, they have preferred the meaning that preserves to the meaning that destroys * * * 'But avoidance of a difficulty will not be pressed to the point of disingenuous evasion.’ * * * ‘Here the intention of the Congress is revealed too distinctly to' permit us to ignore it because of mere misgivings as to power.’” Hopkins Federal Sav. & L. Ass’n v. Clearly, 296 U.S. 315, 334, 335, 56 S.Ct. 235, 80 L.Ed. 251, 257, 258, 100 A.L.R. 1403.
A question of prime importance arises as to whether the right of the company to discharge plaintiffs without a hearing may be found in the language of the agreement.
Before passing to this main issue we observe that no question is raised of the right of an employee to enforce against his employer his rights accruing under a contract between the employer and the union of which the plaintiff is a member. That question was squarely decided in Volquardsen v. Southern Amusement Company, La. App. 1st Cir. 1934, 156 So. 678, which held plaintiff had such a right. The same conclusion was reached in Association of Westinghouse Salaried Employees v. Westinghouse Electric Company, supra,
Generally, it is held that the existence of a collective bargaining agreement between the employer and employee does not of itself deprive the employer of the right to discharge or lay off an employee, but such right may be granted or restricted by the terms of the agreement. Contractual regulations of the right of the employer to discharge employees apply only to the extent and under the circumstances provided for or contemplated by the contract. 56 C.J.S. verbo Master and Servant § 28(41), pp. 200, 201. Under the civil law prevailing in this state, where the employment is personal and for an indefinite period of time, the employment must be considered as being at the will of either party and the employee’s services may be terminated at the will of his employer. Art. 2746, LSA-Civ.Code; Pechon v. National Corporation Service, Inc., 1958, 234 La. 397, 100 So.2d 213, 216; Page v. New Orleans Public Service, Inc., 1936, 184 La. 617, 618, 167 So. 99; United Credit Company v. Croswell Company, 1951, 219 La. *500 993, 54 So.2d 425; Pitcher v. United Oil & Gas Syndicate, 1932, 174 La. 66, 139 So. 760; Russell v. White Oil Corporation, 1926, 162 La. 9, 110 So. 70. Caulfield v. Yazoo & M. V. R. Co., 170 La. 155, 127 So. 585, presented a case where a railroad conductor was discharged following an investigation by his employer. The language employed by Chief Justice O’Niell is indicative of the rights of both employer and employee:
“It appears therefore that the discharge of the plaintiff was done according to the rules governing his employment. The railroad business is one which in its very nature requires strict obedience of the rules of the company on the part of the employees. The rule which requires conductors to report and account for the fares of all passengers who ride on their trains, and which admits of no deviation or excuse, is not so harsh as to be opposed to public policy. And there is nothing contrary to public policy in the agreement between the railroad company and the Order of Railway Conductors that, after a full and fair investigation, the division superintendent of the railroad, and after him the general superintendent, and after him the general manager of the road, shall decide finally on the justness of a suspension or dismissal of a conductor.” Id., 127 So. at page 586.
It must be conceded, therefore, that an employer is free to discharge an employee who renders personal services without notice or hearing provided such action does not contravene the provisions of the employment contract.
The argument is made that the company has no right to discharge without hearing on account of irregularity in the registration of fares when such charges are denied, otherwise an employee is left without any remedy for wrongful discharge. As above pointed out, the employer is at liberty to discharge an employee rendering personal services without a hearing unless the employee is accorded protection by the employment contract. The clause in Section 2 of Article I is free from ambiguity and plainly states:
“Except in case of discharge on account of irregularity in registering cash fares * * * any employee * * * feeling * * * unjustly treated, may ask * * * ”
The clause excludes the employee’s right to have his case reviewed where he is discharged on account of irregularity in the registration of fares. No other meaning can be supplied. Furthermore, the presence of this provision was expressly consented to by the Association, the representative of the employee, and is not repro-bated by law. The parties are bound by their solemn agreement.
It is contended, however, that the exclusionary clause does not affect the entire contract and is not repeated in Article II, which pertains to “Discipline and Investigation”. Section 3 of Article II provides: “An employee shall not he suspended, discharged, or held off a run, except for a serious offense or negligence, or have record entered against him without first having a hearing * * *.” (Emphasis supplied.) There, again the employee may be refused a hearing for a “serious offense or negligence.” Section 2, of Article I must be read in connection with Section 3’ of Article II which eliminates the necessity of a hearing when the discharge is for a serious offense or negligence. Irregularities in connection with the registration of fares certainly is to be regarded as a serious offense. This opinion was held by the judge a quo who decided the offense was serious, and was within the scope of Section 3 of Article II. We agree with that conclusion. Irrespective of whether or not the provision is unjust, the reason for its inclusion in the contract was known to the employer and the Association, and *501 undoubtedly resulted from agreement after negotiation and consent of the parties. Appellants do not question that the Association was empowered to represent each member of the union in confecting the bargaining agreement with their employer. The rights sought herein by appellants must be determined from the terms of the contract, and the agreement enjoins the relief they seek.
The final argument made on behalf of appellants is that if the exclusionary clause be given the same interpretation as applied by the trial court, it would have a far reaching effect on the rights of all of the members of the Association, for the company could at will discharge every member upon the ground of irregular registration of fares. This issue is beside the point. Judge LeBlanc, in Volquardsen v. Southern Amusement Company, supra, answered the contention, saying:
“A considerable part of the argument of plaintiff’s counsel is devoted to the proposition that the defendant is indirectly attempting to abrogate its contract with the local because of dissatisfaction with the wage scale therein stipulated. Granting that to be so, that is an issue which would lie exclusively between the defendant and the local union, the two parties to the contract. The plaintiff is limited to an enforcement of his individual rights under the contract. He cannot champion the rights of the local union as a whole. All that is pertinent to an issue which can only arise between the union and the defendant is therefore irrelevant and immaterial in this proceeding, and will not be considered.” Id., 156 So. at page 679.
Our review of this case leaves us in accord with the decision of the trial court that sustained the exception. By way of summarizing our conclusions:
We hold the employer, under the terms of the collective bargaining agreement had the express right to discharge appellants without submitting to a hearing; that the clause which excluded the right to a hearing on account of irregularities in the registration of fares, was effective as to the entire contract and not limited in its scope to Article I, Section 2; that plaintiffs in this suit may enforce their individual rights but they have no standing in court upon complaints as to matters which affect all members of the Association, and that the exception was properly sustained.
For the foregoing reasons, the judgment from which appealed is affirmed at appellants’ cost.

. Under the caption General Provisions, Article I, appears Sections 1, 2, 3 and 4 under the title Grievance Procedure and Arbitration. Part of Section 2 of the Article I roads:
“Except in case of discharge on account of irregularity in registering cash fares,, tickets, or transfers, any employee of the Company who may be a member of the Association, feeling that he has been unjustly treated, may ask his Superintendent for a review of his case; and on his failing to secure a satisfactory adjustment, may appeal to the Association for further consideration, and if the proper officials of the Association fool that such employee is entitled to further consideration and are unable to secure a satisfactory adjustment, then such question or grievance shall be submitted to the President of the Company. * * ”
Art. II of the contract boars the title Discipline and Investigation. Section 3 reads:
“An employee shall not be suspended, discharged, or held off a run, except for a serious offense or negligence, or have record entered against him without first having a hearing which shall be held within five (5) days after the day he is charged with the alleged offense. At a reasonable time prior to the hearing he will be notified in writing of the charges placed against him, and at the investigation or hearing he may be accompanied by a Union representative who shall be permitted to question the witnesses and otherwise represent the individual involved. He shall have the opportunity to secure the presence of witnesses of the occurrence under investigation. Decision to be rendered by the Company within five (5) days, in writing, if so requested.”
Section 5 of Art. II provides:
“If as a result of any hearing, any correcting measure, or discharge, or suspension is imposed, or if any loss of pay is imposed upon the employee, then such employee may jointly request with the Association, a hearing, and if necessary, arbitration as set forth in the contract.”